892 A.2d 766

Larry E. KOPKO, Sheriff of Warren County, Jacob Sack, Deputy Sheriff of Warren County, Rick Hernan, District Attorney of Warren County, William H. Romine, Sheriff of Mercer County, Mark D. Yassem, Deputy Sheriff of Mercer County, James Epstein, District Attorney of Mercer County, Steven A. Evans, Sheriff of Bradford County, R. Thomas Kline, Sheriff of Cumberland County, Dawn L. Kell, Deputy Sheriff of Cumberland County, M.L. Ebert, District Attorney of Cumberland County, Appellants

v.

Jeffrey B. MILLER, in his Official Capacity as Commissioner of the Pennsylvania State Police of the Commonwealth of Pennsylvania, Appellee.

Supreme Court of Pennsylvania.

Argued May 16, 2005.

Decided Feb. 28, 2006.

Bethann R. Lloyd, Vincent J. Grogan, Holly Mock Whalen, Pittsburgh, for et al Larry E. Kopko.

Andrea C. Parenti, Thomas W. King, III, Butler, for Pennsylvania Sheriff's Association.

Gerald J. Rappert, Butler, Richard A. Sheetz, Amy Zapp, Norristown, for Attorney General's Office.

Richard M. Weintraub, Pro Hac Vice, for National Sheriff's Association.

Thomas F. Jakubiak, Barbara L. Christie, Harrisburg, Leslie Anne Miller, for Jeffrey B. Miller.

Allen C. Warshaw, Glen Robert Grell, for PA Chiefs of Police Association.

Witold J. Walczak, Edward David Rogers, Philadelphia Malia N. Brink, Lawrence Evan Frankel, Naomi Mara Wyatt, Jennean Marie Endres, Philadelphia, for ACLU of PA.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN, BAER, JJ.

## MAJORITY OPINION

Justice NEWMAN.

In this case, we must determine whether sheriffs are "investigative or law enforcement officers" pursuant to the Wiretapping and Electronic Surveillance Control Act (Wiretapping Act or Act) [1] and are thus eligible to receive training and certification from the Pennsylvania State Police (State Police) to conduct wiretap investigations. For the reasons that follow, we hold that sheriffs, while performing vital and necessary duties in the Commonwealth, are not "investigative or law enforcement officers" pursuant to the requirements set forth by statute. Accordingly, we affirm the Order of the Commonwealth Court that granted the Application for Summary Relief filed by the Commissioner and that denied the Application for Summary Relief filed by Appellants.

## FACTS AND PROCEDURAL HISTORY

Appellants are sheriffs, deputy sheriffs (collectively, Sheriffs), and district attorneys in Warren, Mercer, Bradford, and Cumberland Counties. Appellee is the Commissioner of the State Police (Commissioner).

Sheriffs sought to attend a four-day course (the Course) that would have trained them to utilize wiretapping and electronic surveillance technology in their law enforcement activities. However, the State Police rejected their applications for the Course because of uncertainty over the authority of Sheriffs to perform wiretaps under the Wiretapping Act.

The Wiretapping Act specifically provides for training and certification by the State Police:

The Attorney General and the Commissioner of the Pennsylvania State Police shall establish a course of training in the legal and technical aspects of wiretapping and electronic surveillance as allowed or permitted by this subchapter, shall establish such regulations as they find necessary and proper for such training program and shall establish mini-

1. 18 Pa.C.S. §§ 5701–81.

mum standards for certification and periodic recertification of Commonwealth investigative or law enforcement officers as eligible to conduct wiretapping or electronic surveillance under this chapter.

18 Pa.C.S. § 5724.

An "investigative or law enforcement officer" is:

Any officer of the United States, of another state or political subdivision thereof, or of the Commonwealth or political subdivision thereof, **who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter** or an equivalent crime in another jurisdiction, and any attorney authorized by law to prosecute or participate in the prosecution of such offense.

18 Pa.C.S. § 5702 (emphasis added).

There is one additional definition of "law enforcement officer" that is provided in a subsection of the Act related to exceptions at Section 5704:

As used in this paragraph, the following words and phrases shall have the meanings given to them in this subparagraph: **"Law enforcement officer." A member of the Pennsylvania State Police or an individual employed as a police officer who holds a current certificate under 53 Pa.C.S. Ch. 21 Subch. D (relating to municipal police education and training).**

18 Pa.C.S. § 5704(16)(iii) (emphasis added and footnote deleted). Although two of the Sheriffs indicate that they have received Act 120 training,[2] there is no allegation that any of the Sheriffs are employed as police officers pursuant to the Municipal Police Officers Education and Training Act, 53 Pa.C.S. §§ 2161–2171.[3]

---

[2] Sheriffs indicate that Deputy Sheriffs Jacob Sack and Mark Yassem have completed Act 120 training. Appellants' Brief on Appeal at 4–5.

[3] The Pennsylvania Sheriffs' Association, in its *Amicus Curiae* Brief, explains that the training course for deputy sheriffs is different from the one for municipal police officers. The program requirements for deputy sheriffs are found in the Deputy Sheriffs' Education and Training Act, 71 P.S. §§ 2101–2109, and the ones for municipal police officers are set forth in the Municipal Police Officers' Education and Training Act, 53

Section 5702 refers to the "offenses enumerated in this chapter" (the "predicate offenses"), which are set forth at Section 5708, and include the following:

*Section 911* (relating to corrupt organizations)

*Section 2501* (relating to criminal homicide)

*Section 2502* (relating to murder)

*Section 2503* (relating to voluntary manslaughter)

*Section 2702* (relating to aggravated assault)

*Section 2706* (relating to terroristic threats)

*Section 2709.1* (relating to stalking)

*Section 2716* (relating to weapons of mass destruction)

*Section 2901* (relating to kidnapping)

*Section 3121* (relating to rape)

*Section 3123* (relating to involuntary deviate sexual intercourse)

*Section 3124.1* (relating to sexual assault)

*Section 3125* (relating to aggravated indecent assault)

*Section 3301* (relating to arson and related offenses)

*Section 3302* (relating to causing or risking catastrophe)

*Section 3502* (relating to burglary)

*Section 3701* (relating to robbery)

*Section 3921* (relating to theft by unlawful taking or disposition)

*Section 3922* (relating to theft by deception)

*Section 3923* (relating to theft by extortion)

*Section 4701* (relating to bribery in official and political matters)

*Section 4702* (relating to threats and other improper influence in official and political matters)

*Section 5512* (relating to lotteries, etc.)

*Section 5513* (relating to gambling devices, gambling, etc.)

*Section 5514* (relating to pool selling and bookmaking)

Pa.C.S. §§ 2161–2171. Brief of *Amicus Curiae* Participant, Pennsylvania Sheriffs' Association at 15.

*Section 5516* (relating to facsimile weapons of mass destruction)

*Section 6318* (relating to unlawful contact with minor)

(2) Under this title, where such offense is dangerous to life, limb or property and punishable by imprisonment for more than one year:

*Section 910* (relating to manufacture, distribution or possession of devices for theft of telecommunication services)

*Section 2709(a)(4), (5), (6) or (7)* (relating to harassment)

*Section 3925* (relating to receiving stolen property) *Section 3926*

(relating to theft of services)

*Section 3927* (relating to theft by failure to make required disposition of funds received)

*Section 3933* (relating to unlawful use of computer) *Section 4108* (relating to commercial bribery and breach of duty to act disinterestedly)

*Section 4109* (relating to rigging publicly exhibited contest)

*Section 4117* (relating to insurance fraud) *Section 4305* (relating to dealing in infant children) *Section 4902* (relating to perjury)

*Section 4909* (relating to witness or informant taking bribe)

*Section 4911* (relating to tampering with public records or information)

*Section 4952* (relating to intimidation of witnesses or victims)

*Section 4953* (relating to retaliation against witness or victim)

*Section 5101* (relating to obstructing administration of law or other governmental function)

*Section 5111* (relating to dealing in proceeds of unlawful activities)

*Section 5121* (relating to escape)

*Section 5902* (relating to prostitution and related offenses)

*Section 5903* (relating to obscene and other sexual materials and performances)

*Section 7313* (relating to buying or exchanging Federal food order coupons, stamps, authorization cards or access devices)

(3) Under the act of March 4, 1971 (P.L. 6, No. 2), *[FN1]* known as the Tax Reform Code of 1971, where such offense is dangerous to life, limb or property and punishable by imprisonment for more than one year:

Section 1272 (relating to sales of unstamped cigarettes)

Section 1273 (relating to possession of unstamped cigarettes)

Section 1274 (relating to counterfeiting)

(4) Any offense set forth under section 13(a) of the act of April 14, 1972 (P.L. 233, No. 64), *[FN2]* known as The Controlled Substance, Drug, Device and Cosmetic Act, not including the offense described in clause (31) of section 13(a).

(5) Any offense set forth under the act of November 15, 1972 (P.L. 1227, No. 272). *[FN3]*

(6) Any conspiracy to commit any of the offenses set forth in this section.

(7) Under the act of, 1998 (P.L. 874, No. 110), known as the Motor Vehicle Chop Shop and Illegally Obtained and Altered Property Act.

After the State Police rejected their applications, Sheriffs contacted the Commissioner who refused to overturn the decision. Sheriffs then filed a Petition for Review in the Nature of a Complaint in Equity Seeking Preliminary and Permanent Injunctive Relief in the Commonwealth Court, seeking to compel the State Police to admit them into the Course. They also requested a permanent injunction that would preclude the Commissioner from rejecting applicants on the basis of their status as Deputy Sheriffs. The parties then filed Cross–Motions for Summary Relief.

Prior to the hearing on the injunctive relief, the parties reached an interim agreement that the Commonwealth Court

approved permitting the deputy Sheriffs to attend the Course. This agreement also provided that the Commissioner would not certify the deputies under the Wiretapping Act unless the Commonwealth Court determined that they were "investigative or law enforcement officers" pursuant to that Act.

On February 20, 2004, the Commonwealth Court held that Sheriffs were not "investigative or law enforcement officers." The court noted that "[b]ecause the statute authorizes electronic surveillance, which infringes upon the right of privacy, it must be strictly construed." *Kopko v. Miller,* 842 A.2d 1028, 1031 (Pa.Cmwlth.2004). It granted the Commissioner's Application for Summary Relief, and denied Sheriffs' Application for Summary Relief. Sheriffs have appealed that Order to this Court.

## *DISCUSSION*

The role of sheriffs in the Commonwealth commands our utmost respect. They participate in numerous vital law enforcement functions, including working on high-risk teams, drug task forces, and evidence collection teams.[4]

The Commissioner contends that although Sheriffs retain some residual power under common law, they are not "investigative or law enforcement officers" pursuant to the Wiretapping Act. Appellants, however, provide arguments to demonstrate the wisdom and necessity of allowing them to receive the training required to perform wiretaps in Pennsylvania.

■■■ The sole question before us involves the interpretation of statutory language contained in the Wiretapping Act and, as such, presents a question of law. The appropriate scope of review is plenary, and our standard of review is *de novo. Southeastern Pennsylvania Transp. Auth. v. Bd. of Revision of Taxes,* 574 Pa. 707, 833 A.2d 710 (2003).

Our express mandate is to examine and interpret the terms and requirements of the statute; we are not charged with addressing the wisdom, practicality, or desirability of having

4. Appellants' Brief at 5.

Sheriffs perform wiretaps. For the reasons that follow, we hold that Sheriffs are not "investigative or law enforcement officers" pursuant to the Wiretapping Act and, as such, are not authorized to receive the training that they seek. Although Sheriffs have provided meritorious arguments, we cannot ignore the terms of the Wiretapping Act. It is incumbent on the legislature to specify that the Sheriffs are encompassed within the definition of "investigative or law enforcement officers," in order to reach a different conclusion. Accordingly, we affirm the Order of the Commonwealth Court.

The office of the sheriff derives from the Pennsylvania Constitution. "County officers shall consist of ... sheriffs ... and such others as may from time to time be provided by the law." PA. CONST. art. 9, § 4. Although the Constitution establishes the office, it does not describe the duties of a sheriff.

Under common law, the duties of the sheriff were to maintain peace within the county, apprehend and commit to prison those who broke the peace, and maintain law and order. In the role of "peacekeeper" or "peace officer," the sheriff was the principal conservator of peace. *See* A. Anderson, *A Treatise on the Law of Sheriffs, Coroners and Constables with Forms*, Volume 1, § 43 at 36–37 (1941):

> the Sheriff's primary obligation is to represent the sovereignty, authority, and interests of the state in his respective jurisdiction, whereas the local police department represents the interests of the local jurisdiction. Originally, the Sheriff was the King's Man; and today the Sheriff represents the sovereignty of the state as the conservator of the peace and has no superior in his/her county.

According to the National Sheriffs' Association (the National Association), a trade association that represents the interests of the Office of Sheriff in the United States, the "Office of Sheriff has retained the responsibility of being the primary law enforcement officer which secures the public safety of the local community." Brief of *Amici Curiae* Participant, National Sheriffs' Association at 2. The Association lists the following law enforcement duties of Sheriffs in Pennsylvania: (1) work-

ing on drug task forces; (2) working on evidence collection teams; (3) actively participating in criminal investigations; (4) participating in canine patrols; (5) participating in narcotics patrols; (6) executing search warrants; (7) and enforcing the Motor Vehicle Code. *Id.* at 7. Other law enforcement duties may include road patrol, traffic, general and specialized criminal investigations, crime prevention activities, maintaining a crime lab, crime site analysis, criminal intelligence, narcotics enforcement, emergency services, and performing licensing and communication tasks. *Id.* at 10.

The Pennsylvania Sheriffs' Association (the Pennsylvania Association) notes that "Sheriffs receive training that is equal or greater to that obtained by police officers .... [and that] [t]he vast majority of this training is in the areas of law enforcement." Brief of *Amicus Curiae,* Pennsylvania Sheriffs' Association, at 7.[5] The Pennsylvania Association argues, as does the National Association, that sheriffs are "empowered by law to conduct investigations or to make arrests for offenses enumerated" in the Wiretapping Act, including "murder, assault, kidnaping [sic], rape, burglary, and terroristic threats." *Id.* at 9.

Consistent with the position of the National Association, the Attorney General argues that it regularly uses task forces that include deputy sheriffs to investigate and prosecute drug-related crimes. Brief of the Attorney General of Pennsylvania as *Amicus Curiae* in Support of Appellants (AG Brief) at 9. The Attorney General cites *Commonwealth v. Leet,* 537 Pa. 89, 641 A.2d 299 (1994), as authority for the proposition that

---

5. The Pennsylvania Association points to the following topics that are covered as part of the basic training curriculum for Sheriffs: civil law and procedure, communications, control and defensive tactics, courtroom security, crimes code and criminal procedure, criminal investigation, criminal justice system and law enforcement, crisis intervention, cultural diversity and ethnic intimidation, emergency management, emergency vehicle operation, ethics and professional development, families in crisis and domestic violence, firearms, first aid and cardiopulmonary resuscitation, Motor Vehicle Code and enforcement, patrol procedures and operations, physical conditioning, physical and judicial security, prison transportation, related social sciences, related legal issues, special needs groups, and unified court system. Brief of *Amicus Curiae,* Pennsylvania Association at 16.

Sheriffs are authorized to make arrests without warrants for felonies and that, accordingly, unless their power has been specifically abrogated, they may conduct wiretaps. AG Brief at 9. However, the fact that the Attorney General utilizes the services of Sheriffs on its task forces does not, by itself, answer the question before us regarding whether Sheriffs are "empowered by law to conduct investigations of or to make arrests for" the predicate ᵉoffenses. 18 Pa.C.S. § 5702. In fact, the Attorney General concedes that "the issue of how sheriffs may be deployed at a particular point in time is a very different question than what power they inherently possess and that it is the latter, not the former, which ultimately serves to determine what responsibilities or duties they may undertake." *Id.* at 10.

Despite the long list of activities that the National Association cites and the fact that the Attorney General deploys Sheriffs on its task forces, we cannot ignore the fact, as correctly stated by the Commonwealth Court, that "[t]here are only two statutory provisions which specifically reference the modern sheriff's duty." *Kopko,* 842 A.2d at 1038. The General Assembly has limited the powers and duties of sheriffs to those "authorized or imposed upon them by statute." 13 P.S. § 40.[6] Further, a sheriff is mandated to "serve process and execute orders directed to him pursuant to the law." 42 Pa.C.S. § 2921.

▮ The Wiretapping Act permits judicial authorization of the interception of wire, electronic, or oral communications. 18 Pa.C.S. § 5708. Because the statute providing for electronic surveillance involves an infringement upon the right to privacy, we must strictly construe its terms. *Boettger v. Miklich,* 534 Pa. 581, 633 A.2d 1146 (1993). Unless the words of the statute empower Sheriffs to perform electronic surveillance, this Court would violate the duty to construe the statute strictly were we to enlarge its terms to include Sheriffs.

In contrast to the Wiretapping Act in Pennsylvania, California by statute clearly authorizes a sheriff to engage in wire-

6. Act of June 29, 1976, P.L. 475, as amended, 13 P.S. § 40.

tapping. The California Invasion of Privacy statute provides, *inter alia,* that:

**633. Law enforcement officers; authorized use of electronic, etc., equipment**

Nothing in Section 631, 632, 632.5, 632.6, or 632.7 prohibits the Attorney General, any district attorney, or any assistant, deputy, or investigator of the Attorney General or any district attorney, any officer of the California Highway Patrol, any chief of police, assistant chief of police, or police officer of a city or city and county, any sheriff, undersheriff, or deputy sheriff regularly employed and paid in that capacity by a county, police officer of the County of Los Angeles, or any person acting pursuant to the direction of one of these law enforcement officers acting within the scope of his or her authority, from overhearing or recording any communication that they could lawfully overhear or record prior to the effective date of this chapter.

Nothing in Section 631, 632, 632.5, 632.6, or 632.7 renders inadmissible any evidence obtained by the above-named persons by means of overhearing or recording any communication that they could lawfully overhear or record prior to the effective date of this chapter.

CAL. PENAL CODE § 633 (2005). This section appears to include only sheriffs who are paid by the county or by a county police officer. Although the record in the matter *sub judice* does not indicate who pays the salaries of Sheriffs, Sheriffs assert that they "are officers of the Commonwealth." Petition for Review in the Nature of a Complaint in Equity Seeking Preliminary and Permanent Injunctive Relief at ¶ 21.

Our statute is modeled on the federal statute that Congress enacted at Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–520 (Title III); *Commonwealth v. Spangler,* 570 Pa. 226, 809 A.2d 234 (2002). Title III permits, but tightly regulates, the electronic and mechanical interception of wire, oral, and electronic communications by officials of the federal government. In 1986, Congress enacted the Electronic Communications Privacy Act (ECPA), Pub.L. No. 99–508, 100 Stat. 1848, which addresses

more modern forms of communications technologies. States that wish to perform wiretaps must promulgate statutes that closely track the requirements of the federal law, and states may provide more protection, but not less protection, than the federal law. 18 U.S.C. § 2516(2); *Commonwealth v. Birdseye*, 543 Pa. 251, 670 A.2d 1124, 1126 (1996).

There is only one basis upon which law enforcement officers in Pennsylvania may obtain permission to use wiretaps as a means of investigation. This is found in the Wiretapping Act.

Order authorizing interception of wire, electronic or oral communications:

> The Attorney General, or, during the absence or incapacity of the Attorney General, a deputy attorney general designated in writing by the Attorney General, or the district attorney or, during the absence or incapacity of the district attorney, an assistant district attorney designated in writing by the district attorney of the county wherein the suspected criminal activity has been, is or is about to occur, may make written application to any Superior Court judge for an order authorizing the interception of a wire, electronic or oral communication **by the investigative or law enforcement officers** or agency **having responsibility for an investigation involving suspected criminal activities when such interception may provide evidence of the commission of any of the following offenses,** or may provide evidence aiding in the apprehension of the perpetrator or perpetrators of any of the following offenses ... [7]

\* \* \*

18 Pa.C.S. § 5708.

We have noted the imperative of construing the statute strictly because of its implication of the right to privacy:

> In the words of Article I, § 25 of the Constitution of Pennsylvania, "except[ed] out of the general powers of government ... [to] forever remain inviolate," is the right of the people to "be secure in their persons, houses, papers

---

[7]. The predicate offenses listed in Section 5708 are listed *supra* at 5–7.

and possessions from unreasonable searches and seizures ..." Article I, § 8. If the surveillance permitted by the Act is to meet the test of reasonableness, it is essential that, at a minimum, *all* the requirements directed by the Legislature be met.

*Commonwealth v. Hashem,* 526 Pa. 199, 584 A.2d 1378, 1382 (1991).

The provision of Section 5708 that is the focal point of the dispute in the matter *sub judice* is the one restricting the eligibility for training in wiretap procedures to "investigative or law enforcement officers" who have the responsibility to investigate the list of the predicate offenses.

Sheriffs contend that their broad powers under common law, along with principles that this Court enunciated in a trilogy of cases, render them "investigative or law enforcement officers" who are entitled to receive training to perform wiretaps, pursuant to Section 5708. The Commissioner argues that they are not, and we agree with him.

Sheriffs also argue that based on our holding in *Commonwealth v. Leet,* 537 Pa. 89, 641 A.2d 299, 302 (1994), for their authority to be nullified, there would have to be a specific statutory provision abrogating their enforcement power, which includes, their "common law powers ... to arrest for felonies and breaches of the peace committed in their presence." [8] We do not agree.

We first address Sheriffs' position regarding their powers at common law. In *Leet,* we described the history of the common law power of sheriffs to make warrantless arrests for breaches of the peace committed in their presence. *Leet,* 641 A.2d at 301–303. In the matter *sub judice,* the Commonwealth Court correctly noted that "although the Court in *Leet* and *Kline* recognized the common law authority of deputy sheriffs to make arrests, it did not discover any legislative authority empowering them to act as police officers." *Kopko v. Miller,* 842 A.2d 1028, 1039 (Pa.Cmwlth.2004). The Commonwealth Court further determined that "[t]here is no clear

---

8. Appellants' Brief at 23.

precedent that authorizes sheriffs to investigate or arrest for any of the serious predicate offenses listed in the Wiretapping Act," *id.* at 1032, and that "the Act's predicate offenses involve neither breaches of the peace for which sight arrests may be made nor summary offenses for which citations may issue." *Id.* at 1034. Sheriffs have offered no precedent, either in common law or by statute, demonstrating that they are "investigative or law enforcement officers" pursuant to the Wiretapping Act.

Rather, Sheriffs misinterpret the scope of the holdings in the trilogy of cases they rely on from this Court. *See Leet*, 537 Pa. 89, 641 A.2d 299; *Dep't of Trans., Bureau of Driver Licensing v. Kline*, 559 Pa. 646, 741 A.2d 1281 (1999); and *Commonwealth v. Lockridge*, 570 Pa. 510, 810 A.2d 1191 (2002). The three Opinions that they cite are of limited application and do not support their position that they are eligible for the training required to conduct wiretaps and other forms of electronic surveillance.

Our holdings in the three cases prescribe powers that are far more circumscribed than Sheriffs acknowledge. This Court has determined only that Sheriffs are authorized to issue summonses for summary offenses and to make sight arrests for Vehicle Code violations involving breaches of the peace committed in their presence.

Sheriffs cite *Leet* for the proposition that they possess general police powers, which are essentially plenary in nature. However, at the very outset in *Leet*, we articulated precisely how narrow the question was: "[t]he issue is whether a deputy sheriff has authority in Pennsylvania to make a warrantless arrest for motor vehicle violations committed in his presence." *Leet*, 641 A.2d at 300. *Leet* stands only for the principle that qualified sheriffs and their deputies may make **"arrests for motor vehicle violations which amount to breaches of the peace committed in their presence."** *Id.* at 303 (emphasis added). This finding resulted from our determination that sheriffs had that power at common law.

■ We note that the power of Sheriffs to arrest for crimes committed in their presence is no different from that of a private citizen. In *Commonwealth v. Chermansky,* 430 Pa. 170, 242 A.2d 237, 239 (1968), we reiterated that "[a] private person in fresh pursuit of one who has committed a felony may arrest without a warrant. And in Pennsylvania we have always followed the common law rule that if the felon flees and his arrest cannot be effected without killing him, the killing is justified." However, we narrowed the types of felonies for which the rule was applicable and held that:

> from this date forward the use of deadly force by a private person in order to prevent the escape of one who has committed a felony or has joined or assisted in the commission of a felony is justified only if the felony committed is treason, murder, voluntary manslaughter, mayhem, arson, robbery, common law rape, common law burglary, kidnapping, assault with intent to murder, rape or rob, or a felony which normally causes or threatens death or great bodily harm.

*Id.* at 240. *See Commonwealth v. Corley,* 316 Pa.Super. 327, 462 A.2d 1374, 1379 (1993) ("we hold that a citizen's arrest can be made for a breach of the peace that is personally observed by the arrestor."), *aff'd on other grounds,* 507 Pa. 540, 491 A.2d 829, 834 (1985) (declining to rule on the issue).

This common law power to arrest for breaches of the peace committed in one's presence, albeit a Sheriff or a private citizen, does not provide support for Sheriffs' premise that they are empowered to conduct wiretapping, an activity that is authorized only for the most serious crimes set forth at Section 5708.

Notwithstanding the narrow issue that we addressed in *Leet,* Sheriffs grasp onto two isolated phrases and seek to expand them beyond their context to support their argument. First, they cite language in *Leet* referring to "the common law power of the sheriff to make arrests without warrant for felonies and for breaches of the peace committed in his presence." Appellants' Reply Brief at 2, citing *Leet,* 641 A.2d at 303. However, Sheriffs' reliance on the phrase regarding

felonies is misplaced, as they have failed to provide the citation in full. When we spoke of the authority to arrest for felonies, we were merely summarizing the view of Blackstone as to the common law power of the sheriff to make warrantless arrests for felonies and breaches of the peace committed in his or her presence.[9] Accordingly, Sheriffs' reference to the common law power to arrest for felonies is not persuasive, as it is dicta and the situation we addressed in *Leet* did not involve a felony.

Clearly, the ability of Sheriffs to arrest for felonies committed in their presence is not tantamount to their being "investigative or law enforcement officers" for purposes of conducting electronic surveillance. If we were to accept their argument, then a private citizen could be an "investigative or law enforcement officer[]" who could participate in wiretaps, an outcome certainly not contemplated by the Wiretapping Act.

Second, Sheriffs focus on our statement that "the common law powers of the sheriff include the power to enforce the motor vehicle code, and that **such powers have not been abrogated by statute or otherwise.**" *Leet*, 641 A.2d at 301 (emphasis added). From this, they extrapolate that they are "investigative and enforcement officers" because the Wiretapping Act does not contain any specific provision abrogating their power to investigate and arrest for crimes under that Act. However, the scenario in *Leet* is inapposite to the one *sub judice* and dooms the Sheriffs' argument to failure.

In *Leet*, we found that: (1) the deputy sheriff possessed the common law power to make warrantless arrests for breaches of the peace committed in his presence for violations of the Motor Vehicle Code; and (2) the Motor Vehicle Code contained no provision abrogating that common law power:

Unless the sheriff's common law power to make warrantless arrests for breaches of the peace committed in his presence

---

**9.** Contrary to the truncated version that Sheriffs provide, our quotation in its entirety reads: "Blackstone confirms the common law power of sheriffs to make arrests without warrant for felonies and for breaches of the peace committed in his presence." *Leet*, 641 A.2d at 303, citing Blackstone, *Commentaries on the Common Law*, Vol. IV, at 289.

has been abrogated, **it is clear that a sheriff (and his deputies) may make arrests for motor vehicle violations which amount to breaches of the peace committed in their presence. Thus, we search the statutes for authority abrogating the common law power of the sheriff, rather than statutory authority for the sheriff to enforce the law-authority he has always possessed under common law** .... There is, in the motor vehicle code, no unequivocal abrogation of the sheriff's common law power to arrest.... In short, **it is not necessary to find a motor vehicle code provision granting to sheriffs the power to enforce the code**-sheriffs have had the power and duty to enforce the laws since before the Magna Carta; **rather, it would be necessary to find an unequivocal provision in the code abrogating the sheriff's power in order to conclude that the sheriff may *not* enforce the code.**

*Leet,* 641 A.2d at 303 (emphasis added) (footnote omitted).

In the matter before us, however, Sheriffs can point to no case that establishes that a sheriff is an "investigative or law enforcement officer" under the Act with arrest and investigative authority regarding the crimes that are enumerated at Section 5708. Accordingly, they are unlike the sheriff in *Leet.* Because the deputy sheriff in *Leet* possessed the power to arrest for violations of the Motor Vehicle Code in the circumstances we described, that code would had to have contained a provision abrogating his power in order for his existing authority to be nullified.

In the instant matter, however, the Sheriffs have been empowered by no authority under common law to investigate and arrest for the crimes listed in the Wiretapping Act. Therefore, the Wiretapping Act need not contain a provision abrogating a power that they never had.

Further, it is clear that in *Leet* we did not ascribe the residual powers of the sheriff as being all embracing. In *Commonwealth v. Price,* 543 Pa. 403, 672 A.2d 280, 282 (1996), we described *Leet* by stating that "[t]here we held that the common law powers of a sheriff include the power to enforce

the Motor Vehicle Code and that such power has not been abrogated by statute or otherwise."

Our holdings in *Kline* and *Lockridge* do not support Sheriffs' argument that they possess any common law residual power to arrest on information for offenses that were not committed in their presence.

In *Kline*, this Court was asked whether a deputy sheriff, who had completed a basic training course for sheriffs, a driving under the influence module given to municipal police officers, and field sobriety testing qualified as a "police officer" for purposes of enforcing the Motor Vehicle Code. We cited our holding in *Leet*, which noted that although sheriffs retain their common law authority to enforce the Motor Vehicle Code, "anyone who enforces the motor vehicle laws should be required to undergo training appropriate to the duties." *Kline*, 741 A.2d at 1283 (quoting *Leet*, 641 A.2d at 303). Accordingly, because the record in *Kline* established that the deputy sheriff had received the same type of training as municipal police officers did, we held that he was authorized to enforce the Motor Vehicle Code by requesting a driver to submit to field sobriety and blood alcohol tests. As in *Leet*, we determined that a sheriff is empowered to make an arrest for a motor vehicle violation committed in his presence.

*Kline* is inapposite to the position of Sheriffs because the crimes that are enumerated in the Wiretapping Act are neither violations of the Motor Vehicle Code nor other offenses that are synonymous with a breach of the peace. Further, as the Commissioner appropriately concludes, "it is not possible that the enumerated crimes will be committed in the presence of the officer (as they were in *Leet* and *Kline*); for if they were, a wiretap would *not only be unnecessary, but unauthorized*." Brief of Appellee at 13.[10]

10. The Wiretapping Act establishes that the Commissioner is correct that a wiretap would not be necessary with respect to a crime committed in the presence of an officer. The Wiretapping Act states that:

Each application for an order of authorization to intercept a wire, electronic or oral communication shall be made in writing upon the personal oath or affirmation of the Attorney General or a district

In *Lockridge*, we considered whether a deputy sheriff could file a citation against a driver for driving with a suspended license where the deputy did not witness the offense. We found that *Leet* was inapplicable because a Pennsylvania Rule of Criminal Procedure governed this question and the power of the sheriff at common law was irrelevant:

> The power to arrest, as *Leet* instructs us, emanates from the common law. *Id.* **The filing of a citation, however, concerns a process that is among those set out in the Pennsylvania Rules of Criminal Procedure for commencing a summary action. The Rules are this court's prescriptions,** adopted under Article V, § 10(c) of the Pennsylvania Constitution. We have held that the Constitution's grant to this Court of rule-making authority is exclusive. *In re 42 Pa.C.S. § 1703*, 482 Pa. 522, 394 A.2d 444 (1978). Thus, a statute cannot abrogate any of the procedural rules this court has duly adopted. *See id.* **Accordingly, the test enunciated in *Leet* and the parameters of a sheriff's common law arrest powers as discussed in that case have no present bearing. Rather, [the deputy sheriff's] authority to file the Citation is wholly determined by reference to the Rules themselves.**

> **Therefore, we conclude that the Superior Court was correct to distinguish *Leet* and apply the Rules to determine whether [the deputy sheriff] had the authority to file the Citation. We also conclude that it was not necessary for the Superior Court to pass upon Appellant's contention regarding a breach of the peace as discussed in *Leet*, for that aspect of *Leet's* discussion has**

attorney of the county wherein the suspected criminal activity has been, is or is about to occur and shall contain all of the following:

\* \* \*

(3) A sworn statement by the investigative or law enforcement officer who has knowledge of relevant information justifying the application, which shall include:

\* \* \*

(vii) **A particular statement of facts showing that other normal investigative procedures with respect to the offense have been tried and have failed, or reasonably appear to be unlikely to succeed if tried or are too dangerous to employ.**

18 Pa.C.S. § 5709(3)(vii) (emphasis added).

> no relevance to an analysis of law enforcement authority
> which is premised on the Rules.

*Lockridge,* 810 A.2d at 1194–95 (footnote omitted) (emphasis added).

Accordingly, support from the trilogy of cases that Sheriffs rely on is limited. Even in *Leet,* while recognizing the common law power of the sheriff, we noted that that authority, as it existed at the time of the Magna Carta, is not immutable. We pointed specifically to the changing parameters of the sheriff's role, noting that as the judicial class gradually developed, "the sheriff's role evolved from that of judge to that of court officer ..." *Leet,* 641 A.2d at 301. Further, it is also clear, as the Commissioner notes, that "[t]he common law as received in Pennsylvania in 1776, has been reduced or otherwise redefined by statute, practice, and precedent." Brief of Appellee at 11.

While there is no law that specifically abrogates whatever residual common law arrest authority remains in the sheriff, 18 Pa.C.S. § 107(b) has abolished common law crimes: "[n]o conduct constitutes a crime unless it is a crime under this title or another statute of this Commonwealth." No court has specifically defined what the extent of a sheriff's power is with respect to arrest. The significance of this cannot be overstated or ignored because the only persons who are eligible to be trained to conduct wiretaps are those who have been empowered to arrest for or investigate the predicate crimes listed at Section 5708.

Sheriffs do not have investigative powers pursuant to 42 Pa.C.S. § 2921,[11] and the Wiretapping Act does not invest them with that authority. Accordingly, in Pennsylvania, our courts have not mapped out definitive boundaries to define the extent of the residual common law authority of the Sheriffs regarding criminal investigation and arrest. Case law as argued by Sheriffs does not support their position that they

11. This section provides that "[t]he sheriff, either personally or by deputy, shall serve process and execute orders directed to him pursuant to law." 42 Pa.C.S. § 2921.

are authorized to participate in wiretap training, which is the subject of a purely statutory scheme unknown at common law.

Hence, the common law is not a source of legal authority upon which Sheriffs can rely in support of their argument that they are empowered to conduct wiretapping and electronic surveillance. The only remaining possible source of legal authority is by statute, and, as the Commonwealth Court correctly determined, the Wiretapping Act and statutory provisions regarding sheriffs do not lend support to Sheriffs either.

The terms of the Wiretapping Act provide that only "investigative or law enforcement officers . . . having responsibility for an investigation involving suspected criminal activities" regarding the predicate crimes may conduct wiretaps. 18 Pa.C.S. § 5708. Section 5702 defines "investigative or law enforcement officers" as "[a]ny officer . . . who is **empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter.**" 18 Pa.C.S. § 5702 (emphasis added). There is no statutory authority that demonstrates that sheriffs are "empowered" to investigate or arrest for the predicate offenses, none of which are violations of the Motor Vehicle Code or other offenses that are synonymous with breaches of the peace.[12] Further, these crimes are not ones that are likely to be committed in the presence of a

12. In contrast to Pennsylvania, at least one other jurisdiction has provided sheriffs with broad powers. *See* Cal. Gov't Code § 26601 (2005). "The sheriff shall arrest and take before the nearest magistrate for examination all persons who attempt to commit or who have committed a public offense." The legislature defines a "crime" and a "public offense" as:

an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, either of the following punishments:
1. Death;
2. Imprisonment;
3. Fine;
4. Removal from office; or
5. Disqualification to hold and enjoy any office of honor, trust or profit in this state.

Cal.Penal Code § 15 (2005).

Sheriff, for, if they were, other less intrusive investigative procedures would suffice.

If the legislature wanted to empower Sheriffs to arrest for or investigate the predicate crimes, it could have done so, as it has in other legislation. For example, the legislature has distinguished between general and limited police powers. State and municipal police departments are charged with the prevention and detection of crime. *See* 71 P.S. §§ 250–52 (with respect to the State Police); 42 Pa.C.S. § 8952 (regarding municipal police departments). This legislative scheme does not include the office of sheriff. Further, the legislature has provided explicitly that police officers include sheriffs **only** with respect to a county of the second class. *See* 18 Pa.C.S. § 103 (a police officer includes only sheriffs and deputies of a county of the second class); 53 Pa.C.S. § 2162 (the office of the sheriff in a second class county may exercise full police powers upon meeting the training requirements therein specified).

District Attorney or County Detectives have full police powers.[13] Pursuant to 16 P.S. § 1440(d), "[c]ounty detectives shall be general police officers and shall have the powers conferred on constables by the laws of this Commonwealth, so far as they relate to criminal law and procedure." In *Commonwealth v. Dietterick*, 429 Pa.Super. 180, 631 A.2d 1347, 1350 (1993), the Superior Court held that "[u]nder the plain language of the statute, county detectives are specifically granted the powers of both general police officers *and* constables. To interpret this statute as granting county detectives

13. The Commissioner notes that the State Police had offered admission to the Course to the five deputy sheriff Appellants, on the condition that their respective county District Attorneys cross-designate them as county detectives who are "law enforcement officers who clearly are authorized to perform wiretaps under the Wiretapping Act. Cross-designation would have facilitated both training and certification of the applicants because county detectives have full police powers and, thus, are authorized to investigate and make arrests for all indictable offenses, including offenses enumerated in the Wiretapping Act." Appellee's Answer to Petition for Review in the Nature of a Complaint in Equity and New Matter at ¶ 1. However, Sheriffs, through counsel, rejected that offer and responded that the deputy sheriffs did not wish to be admitted to the Course under District Attorney authorization.

only those powers conferred upon constables would totally negate the preceding phrase which grants county detectives 'general police powers.'" The Superior Court concluded that "[i]t is well settled that '[w]hen vesting a group with police powers and duties, the Legislature does so with specificity.'" *Id.* (internal citations omitted).

Our Rules of Criminal Procedure specify that police officers, not Sheriffs, are to execute arrest warrants. *See* Pa. R.Crim.P. 515: "[a] warrant of arrest shall be executed by a police officer." In the matter *sub judice,* the Wiretapping Act confers no such specific empowerment upon Sheriffs to conduct investigations of or to arrest for any of the predicate offenses listed at Section 5708.

The Commonwealth Court correctly determined that the history of wiretapping demonstrates that it is statutory and separate from the common law. It described how the Wiretapping Act, which allows governmental intrusion through sophisticated surveillance techniques into the home of the citizens, "strikes a balance between citizens' legitimate expectation of privacy and the needs of law enforcement officials to combat crime." *Kopko v. Miller,* 842 A.2d 1028, 1038 (Pa. Cmwlth.2004). "Because of this privacy concern, the provisions of the Wiretap Act are strictly construed." *Commonwealth v. Spangler,* 570 Pa. 226, 809 A.2d 234, 237 (2002).

As part of the protection of the right to privacy, the Act "does contain strict guidelines as to how and when electronic surveillance methods shall be permitted...." *Boettger v. Miklich,* 534 Pa. 581, 633 A.2d 1146, 1148 (1993). The Act's requirement that only "investigative or law enforcement officers" may be trained in wiretapping and electronic surveillance is one such restriction. The fact that the Attorney General uses Sheriffs to assist on law enforcement task forces does not substitute for a finding that Sheriffs are "empowered by law to conduct investigations of or to make arrests for" the predicate offenses. 18 Pa.C.S. § 5702.

The legislature, in ascribing duties to Sheriffs, determined that they should have only such authority as is "authorized or

imposed upon them by statute." 13 P.S. § 40. The Wiretapping Act does not authorize or impose upon Sheriffs any role regarding the predicate offenses. There is no other statutory or common law source of authority that allows them to perform such "investigative or law enforcement duties" with respect to the crimes warranting the conduct of electronic surveillance.

Because the statute authorizes intrusive and sophisticated methods of eavesdropping on the private conversations of individuals, it implicates the invasion of a protected sphere of privacy. We note that this type of secret capture of communications is far more pervasive and indiscriminate than a search warrant for a specific and tangible item at a named and precise location. It is for that reason that we construe the statute strictly. *See Boettger*, 534 Pa. 581, 633 A.2d 1146; *Hashem*, 584 A.2d at 1382 (emphasis supplied) (holding that)

> [n]o violations of *any* provisions of the Act will be countenanced, nor will the failure of prosecutors to diligently follow the strict requirements of the Act be lightly overlooked. We must remain steadfast in this determination because there can be no greater infringement upon an individual's rights than by an indiscriminate and unchecked use of electronic devices. Where, in the wisdom of the legislature, such devices may be authorized, as in the present act, that use will be strictly adhered to and jealously enforced; for the alternative, no privacy at all, is unthinkable.).

## CONCLUSION

Accordingly, we affirm the determination of the Commonwealth Court that Sheriffs are not "investigative or law enforcement officer[s]" who are "empowered by law to conduct investigations of or to make arrests for" the predicate offenses of the Wiretapping Act. 18 Pa.C.S. §§ 5724, 5702. The Wiretapping Act does not empower them to undertake such activities; in fact, one specific definition therein clearly contradicts

the position of Sheriffs and their *amici curiae* that they are "law enforcement officers." [14]

Further, Sheriffs have cited to no relevant common law authority empowering them to investigate or arrest for the predicate crimes in the Wiretapping Act, ones that by virtue of their serious natures are not likely to occur in the presence of the Sheriffs. Sheriffs have misconstrued the extent of our holding in *Leet,* attempting to garner support for their position from cases that are inapposite to the one before us. Wiretapping countenances invasions of privacy unknown at common law and not addressed in *Leet.*

Because of this, we construe the statute narrowly and determine that there is no legal basis allowing Sheriffs to enroll in the Course that provides the necessary training for the conduct of activities pursuant to the Wiretapping Act since they are not empowered by law to make arrests pursuant to this Act. For Sheriffs to engage in electronic surveillance, the state legislature must amend the Act to provide specifically that a Sheriff is an "investigative or law enforcement officer," pursuant to Section 5702. We affirm the grant of the Commissioner's Application for Summary Relief and the denial of Sheriffs' Application for Summary Relief.

Chief Justice CAPPY and Justice CASTILLE, EAKIN and BAER join the opinion.

Former Justice NIGRO did not participate in the decision of this case.

Justice SAYLOR concurs in the result.

---

**14.** *See* 18 Pa.C.S. § 5704(16)(iii).