**COMMONWEALTH of Pennsylvania,
Appellant**

v.

**John M. MARCONI, Appellee.**

Superior Court of Pennsylvania.

Argued March 9, 2010.

Filed May 11, 2010.

Reargument Denied July 23, 2010.

Amy Zapp, Assistant District Attorney, Harrisburg, for Commonwealth, appellant.

Gregory A. Henry, Bradford, for appellee.

BEFORE: BENDER, BOWES and COLVILLE *, JJ.

**OPINION BY BENDER, J.:**

¶ 1 The Commonwealth appeals from the trial court's order dated April 24, 2009, granting John M. Marconi's motion to suppress the physical evidence obtained after his car was stopped at a sobriety checkpoint. We affirm.

¶ 2 The trial court set forth the facts of the case as follows:

On September 21, 2007, a DUI checkpoint was set-up by the Forest County Sheriff's Department on State Route # 66 in Forest County. The roadblock was operated by Forest County and Warren County Sheriffs and Probation Officers. At 2:45 a.m., on September 22, 2007, [Mr. Marconi] drove his vehicle into the checkpoint area with a 16 year old passenger. As [Mr. Marconi] drove into the checkpoint area, he was initially inspected by Christy Mealy, an Adult Probation Officer with Forest County. Ms. Mealy, noticing the odor of alcohol coming from [Mr. Marconi,] held [Mr. Marconi's] car in place and waived over Deputy Sheriff William Carbaugh of Forest County and Chief Probation Officer Carl McKee of Warren County.

* Retired Senior Judge Assigned to the Superior Court.

They administered a preliminary breath test, which [Mr. Marconi] failed. Deputy Carbaugh asked [Mr. Marconi] to get out of his vehicle and had him perform three (3) field sobriety tests, which he also failed. A blood sample was drawn from [Mr. Marconi] at the checkpoint, which revealed a .14% blood alcohol content.

Trial Court Opinion (T.C.O.), 4/29/09, at 1–2. Mr. Marconi was arrested by Deputy Sheriff Carbaugh and subsequently charged with two counts of driving under the influence of alcohol (DUI), endangering the welfare of a child, and careless driving. On February 29, 2008, he filed a motion to suppress evidence, which was denied on July 9, 2008.

¶ 3 On February 4, 2009, Mr. Marconi filed a motion *in limine,* arguing that the DUI checkpoint was illegally operated as it was conducted solely by Forest and Warren County Sheriff's and Probation Departments, not by police officers. As such, Mr. Marconi requested that all evidence obtained as a result of that illegal sobriety checkpoint be suppressed. To support this argument, Mr. Marconi relied on the trial court's own earlier decision in *Commonwealth v. Culp,* No. 67 of 2006 (Forest Cty. October 9, 2008). There, the trial court "held that DUI roadblocks must be operated by police officers and not sheriffs." T.C.O., 4/29/09, at 2. Finding that, here, the DUI checkpoint was run solely by sheriffs and probation officers, the court granted Mr. Marconi's motion *in limine* and ordered that all evidence obtained after his vehicle was stopped at the DUI checkpoint be suppressed. The Com-

monwealth filed a timely notice of appeal, as well as a timely concise statement of matters complained of on appeal in accordance with Pa.R.A.P. 1925(b). Herein, the Commonwealth raises one issue for our review: "Whether the trial court erred as a matter of law by granting [Mr. Marconi's] motion *in limine* for suppression of evidence[?]" [1] Commonwealth's Brief at 4.

¶ 4 The issue presented by the Commonwealth actually consists of two separate arguments. First, the Commonwealth argues that Mr. Marconi was procedurally barred from raising the claims in his February 4, 2009 motion *in limine,* which the Commonwealth contends was actually a motion to suppress evidence. Citing Pennsylvania Rules of Criminal Procedure 578 and 579, the Commonwealth argues that pretrial motions, including motions to suppress, must be filed together in one omnibus pretrial motion filed within thirty days of the date of the defendant's arraignment. Commonwealth's Brief at 8 (citing Pa.R.Crim.P. 578 and 579). If these requirements are not met, the suppression issue is deemed waived under Pa.R.Crim.P. 581(B). Thus, as the instant motion *in limine* was not filed together with Mr. Marconi's first motion to suppress, nor within thirty days of the date of Mr. Marconi's arraignment, the Commonwealth concludes that Mr. Marconi waived the suppression issue.

¶ 5 While we agree with the Commonwealth that Mr. Marconi's motion *in limine* was in fact a motion to suppress evidence, we disagree with its conclusion that he waived the suppression issue.

---

1. Our standard of review for a grant or denial of a suppression motion is as follows:

 In reviewing an order from a suppression court, we consider the Commonwealth's evidence, and only so much of the defendant's evidence as remains uncontradicted. We accept the suppression court's factual findings which are supported by the evidence and reverse only when the court draws erroneous conclusions from those facts.
 *Commonwealth v. Hoopes,* 722 A.2d 172, 174–75 (Pa.Super.1998), appeal denied, 558 Pa. 629, 737 A.2d 1224 (1998) (citation omitted).

Rule 581(B) permits the filing of motions to suppress which do not meet the requirements of Rules 578 and/or 579 where "the opportunity [to file such a motion] did not previously exist, or the interests of justice otherwise require." Pa.R.Crim.P. 581(B). "Whether the opportunity did not previously exist or the interests of justice otherwise require is a matter for the discretion of the trial judge." *Commonwealth v. Long*, 753 A.2d 272, 279 (Pa.Super.2000) (quoting *Commonwealth v. Cooke*, 260 Pa.Super. 528, 394 A.2d 1271, 1274 (1978)). Here, the trial court concluded that, because its decision in *Culp* regarding the authority of sheriffs to conduct DUI checkpoints was not filed until October 9, 2008, after Mr. Marconi had filed his first motion to suppress, the interests of justice required that it proceed with Mr. Marconi's second motion to suppress. We agree and conclude that the issues raised in Mr. Marconi's second motion to suppress were not waived.

█ ¶ 6 Next, the Commonwealth contends that the trial court erred "in determining that the sheriffs lacked the authority to arrest [Mr. Marconi] for violations of the Vehicle Code." Commonwealth's Brief at 9 (emphasis added). At the outset, we disagree with the Commonwealth that the issue in this case is whether sheriffs had the authority to *arrest* Mr. Marconi. The trial court's decision to grant Mr. Marconi's motion to suppress the evidence was instead based on its conclusion that the

Forest and Warren County Sheriff's Departments, acting without the assistance of police, lacked the authority to *conduct and operate* the sobriety checkpoint.[2] Therefore, the question for this Court is whether a sheriff has the authority to conduct and operate a DUI roadblock without the assistance of police officers.[3]

¶ 7 Initially, we note that, contrary to the trial court's statement in *Culp*, the legislative authority permitting sobriety checkpoints is found in section 6308(b) of the Motor Vehicle Code, 75 Pa.C.S. §§ 101–9901. *Culp*, No. 67 of 2006, at 3 (stating that the statutory authority for DUI checkpoints is found in 67 Pa.Code. § 212.5(e)). Section 6308(b) states:

**(b) Authority of police officer.—** Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b); *See also Commonwealth v. Ziegelmeier*, 454 Pa.Super. 330, 685 A.2d 559, 561 n. 4 (1996) ("Authority for police to conduct [DUI] roadblocks is

---

2. In arguing that the sheriffs possessed the authority to arrest Mr. Marconi, the Commonwealth relies on *Commonwealth, Dept. of Transp., Bureau of Driver Licensing v. Kline*, 559 Pa. 646, 741 A.2d 1281, 1285 (2000). However, we need not address why *Kline* is inapplicable because the Commonwealth's arguments relying on that case all center on its mistaken belief that the issue for our review is whether sheriffs had the authority to arrest Mr. Marconi.

3. We also acknowledge that the fact that Mr. Marconi was initially stopped by a probation officer raises questions regarding whether that stop constituted a detention of Mr. Marconi's vehicle and, if so, whether the probation officer had the authority to effectuate that detention. However, as this issue was not argued in Mr. Marconi's motion to suppress and, thus, was not addressed by the trial court, it has been waived for our review.

established in 75 Pa.C.S. § 6308(b).").
This section explicitly states that a "police
officer" has the authority to conduct DUI
roadblock and, thus, we must determine
whether a sheriff constitutes a "police offi-
cer" under that section of the Vehicle
Code.

¶ 8 Our Supreme Court addressed a
similar question in *Commonwealth v. Leet*,
537 Pa. 89, 641 A.2d 299 (1994). There, a
sheriff observed the defendant pass sever-
al cars illegally, after which the sheriff
executed a traffic stop of the defendant's
vehicle. *Id.* During the traffic stop, the
sheriff discovered a controlled substance
and other illegal items in the car. *Id.* The
defendant was ultimately arrested and
charged with various motor vehicle and
controlled substance violations. *Id.* at
300–01. The defendant sought to suppress
all physical evidence, arguing that, under
section 6308(a) of the Vehicle Code, only a
"police officer," not a sheriff, possesses the
authority to stop a vehicle based on a
traffic violation. *Id.* at 301; *see* 75 Pa.C.S.
6308(a). The trial court agreed with the
defendant and granted his motion to sup-
press. This Court affirmed.

¶ 9 However, on appeal to the Pennsyl-
vania Supreme Court, the Court first de-
termined that sheriffs possess the common
law authority to make warrantless arrests
for breaches of the peace and felonies that
are committed in their presence, unless
that power has been abrogated by statute.
*Id.* at 303. Characterizing the Vehicle
Code violation that led to the defendant's

detention in *Leet* as a "breach of the
peace" committed in the sheriff's presence,
the Court then evaluated whether the Mo-
tor Vehicle Code abrogated the sheriff's
common law power to arrest for such an
offense. *Id.* The Court concluded that
nothing in the Code circumscribed this
power and, thus, sheriffs have the authori-
ty to "stop, detain, and investigate a mo-
torist who breaches the peace while oper-
ating a motor vehicle in the presence of
the [s]heriff." [4] *Id.*

¶ 10 At first glance, it seems that *Leet*
vests sheriffs with the common law author-
ity to enforce any provision of the Motor
Vehicle Code, including section 6308(b)
dealing with sobriety checkpoints. How-
ever, since *Leet*, our Supreme Court has
clarified that its holding there was narrow
and that the common law power of a sher-
iff is not immutable. *Kopko v. Miller*, 586
Pa. 170, 892 A.2d 766, 775, 778 (2006). For
instance, in *Kopko*, our Supreme Court
explicitly stated that a sheriff's power to
arrest for a breach of the peace committed
in his or her presence is "no different from
that of a private citizen." *Id.* at 774. The
Court reaffirmed this rationale in *Com-
monwealth v. Dobbins*, 594 Pa. 71, 934
A.2d 1170 (2007), declaring that, "*Leet* vin-
dicated little more than an arrest authority
held by any citizen for felonies and breach-
es of the peace committed in the sheriff's
presence." *Id.* at 1180–81. In light of
these statements clarifying the scope of
*Leet*, we conclude that our Supreme Court
intended *Leet* to clarify only that sheriffs
have the common law authority to arrest

---

4. We note that our Supreme Court qualified
its holding in *Leet* by mandating that the
arresting sheriff must possess the "same type
of training" as a police officer receives in
order to have the authority to enforce the
motor vehicle laws of this Commonwealth.
*Id.* The Court later clarified that to satisfy the
"same type of training" requirement, a sheriff
need not be certified in accordance with the
Municipal Police Officers' Education and

Training Act, otherwise known as "Act 120."
*Kline*, 741 A.2d at 1285. Instead, the Court
has found that a sheriff who has completed
Vehicle Code and DUI training which was
"the exact same training and course modules
that are required of municipal police cadets
seeking Act 120 certification" was sufficient
to permit the sheriff to make an arrest at a
sobriety checkpoint. *Id.*

for breaches of the peace and felonies committed in their presence. Since a violation of the Vehicle Code constitutes a "breach of the peace," sheriffs who *first* witness a motorist violate the Code may then arrest for such an offense.

 ¶ 11 Here, however, we conclude that sheriffs did not stop, detain, and investigate Mr. Marconi *after* witnessing him commit a Vehicle Code violation constituting a breach of the peace. Instead, sheriffs set up a sobriety checkpoint to *investigate* whether there were intoxicated drivers traveling on Route # 66 in the early morning hours of September 22, 2007. During the course of this investigative roadblock, Mr. Marconi's car was stopped and detained, after which sheriffs conducted a breath test, three field sobriety tests, and a blood draw before determining that Mr. Marconi had violated a provision of the Vehicle Code by driving while intoxicated. These facts reveal that conducting and operating the DUI checkpoint, which led to Mr. Marconi's arrest, was more akin to an investigation, not merely to sheriffs executing a warrantless arrest after observing a motorist violate the Motor Vehicle Code. While "in Pennsylvania, our courts have not mapped out definitive boundaries to define the extent of the residual common law authority of the [s]heriffs regarding criminal *investigation* and arrest," we conclude that the common law does not vest sheriffs with the authority to conduct an investigation in the form of a DUI roadblock. *Kopko,* 892 A.2d at 778 (emphasis added).

¶ 12 This conclusion is supportable on several grounds. First, we reiterate our Supreme Court's statement that sheriffs possess common law authority no different than that of a private citizen. Therefore, if we hold herein that sheriffs are author-

ized to conduct and operate DUI roadblocks, we are essentially permitting private citizens to set up checkpoints and then conduct citizens' arrests of intoxicated motorists. *Id.* at 774. We do not believe this result was contemplated by the Motor Vehicle Code, nor by our Supreme Court. In fact, the Court reached a similar conclusion in *Kopko,* reasoning that to accept an argument that sheriffs qualify as "investigative or law enforcement officers" authorized to conduct wiretap investigations would be the same as saying that "a private citizen ... could participate in wiretaps, an outcome certainly not contemplated by the Wiretapping Act." *Id.* at 775.

¶ 13 Furthermore, although our Supreme Court has never addressed the authority of sheriffs to conduct investigations under the Motor Vehicle Code, when examining that authority under other statutes, the Court has declined to find that sheriffs possess similar investigative authority as police officers, especially where the investigation infringes on citizens' constitutional rights. For instance, in *Kopko,* our Supreme Court held that sheriffs do not have the authority to conduct wiretapping investigations under the Pennsylvania Wiretapping and Electronic Surveillance Act, 18 Pa.C.S. §§ 5703–5728. *Kopko,* 892 A.2d at 778. Similarly, in *Dobbins,* the Court held that, "absent specific statutory authorization, sheriffs lack authority to conduct independent investigations under the Controlled Substances Act, including the seeking of search warrants where no breach of the peace or felony has occurred in their presence." [5] *Dobbins,* 934 A.2d at 1181.

¶ 14 Similarly, here, sobriety roadblocks constitute a serious intrusion upon a citizen's constitutional right to be free from

---

5. *Dobbins* addressed the authority of sheriffs under the Controlled Substance, Drug, Device and Cosmetic Act ("Controlled Substances Act"), 35 P.S. §§ 780–1–780–144.

unreasonable searches and seizures. *See Commonwealth v. Tarbert*, 517 Pa. 277, 535 A.2d 1035, 1043 (1987). Because of the gravity of this infringement, our Supreme Court has developed comprehensive requirements that must be followed in order to reduce a checkpoint's intrusiveness to a "constitutionally acceptable degree."[6] *Id.* We find it implausible that our Supreme Court would create such thorough mandates for the operation of a DUI roadblock and then permit sheriffs, who have no more authority than the common law power to arrest similar to that of a private citizen, to independently oversee that entire venture. Thus, we decline to find that the common law authority of sheriffs includes the power to conduct an investigation in the form of a DUI roadblock when such conduct implicates serious constitutional rights of the citizens of this Commonwealth.

¶ 15 As such, the only other potential source of authority for a sheriff to conduct a DUI roadblock is a statute. As stated previously, the authority for law enforcement to conduct DUI checkpoints is found in section 6308(b) of the Motor Vehicle Code. Because this statute involves an infringement on citizens' constitutional rights, the language of this statute must be strictly construed. *See Kopko*, 892 A.2d at 772 (because the Wiretapping Act involves an infringement upon the constitutional right to privacy, its terms must be strictly construed). Section 6308(b) specifically refers to the authority of a "police officer." Section 102 of the Vehicle Code defines "police officer" as, "[a] natural person authorized by law to make arrests for violations of law." 75 Pa.C.S. § 102. Strictly construing this language, we conclude that the term "police officer" as used in section 6308(b) means just that—a police officer, not a sheriff.[7]

6. For instance, our Supreme Court has provided the following guidelines for conducting a constitutionally acceptable roadblock:

[T]he conduct of the roadblock itself can be such that it requires only a momentary stop to allow the **police** to make a brief but trained observation of a vehicle's driver, without entailing any physical search of the vehicle or its occupants. To avoid unnecessary surprise to motorists, the existence of a roadblock can be so conducted as to be ascertainable from a reasonable distance or otherwise made knowable in advance. The possibility of arbitrary roadblocks can be significantly curtailed by the institution of certain safeguards. First, the very decision to hold a drunk-driver roadblock, as well as the decision as to its time and place, should be matters reserved for prior administrative approval, thus removing the determination of those matters from the discretion of **police officers** in the field. In this connection it is essential that the route selected for the roadblock be one which, based on local experience, is likely to be travelled [sic] by intoxicated drivers. The time of the roadblock should be governed by the same consideration. Additionally, the question of which vehicles to stop at the roadblock

should not be left to the unfettered discretion of **police officers** at the scene, but instead should be in accordance with objective standards prefixed by administrative decision.

*Tarbert*, 535 A.2d at 1043 (emphasis added).

7. We can reconcile this conclusion with our Supreme Court's decision in *Leet*, where the Court essentially determined that a sheriff was a "police officer" for purposes of section 6308(a), which reads:

(a) **Duty of operator or pedestrian.**—The operator of any vehicle or any pedestrian reasonably believed to have violated any provision of this title shall stop upon request or signal of any police officer and shall, upon request, exhibit a registration card, driver's license and information relating to financial responsibility, or other means of identification if a pedestrian or driver of a pedalcycle, and shall write their name in the presence of the police officer if so required for the purpose of establishing identity.

75 Pa.C.S.A. § 6308(a). This section of the Vehicle Code authorizes a "police officer" to stop a driver or pedestrian *after* forming a reasonable belief that that motorist or pedes-

¶ 16 Thus, we conclude that sheriffs do not have the authority to independently conduct DUI roadblocks under the common law, nor under any statute, including the Motor Vehicle Code. Accordingly, the DUI roadblock at issue in the present case was illegal as it was run solely by the Forest and Warren County Sheriff's and Probation Departments without corroboration by police officers. Accordingly, we conclude that the trial court did not err in granting Mr. Marconi's motion to suppress.

¶ 17 Order affirmed.

trian violated a provision of the Vehicle Code. Thus, a sheriff necessarily fits the definition of a "police officer" as used in that section due to a sheriff's common law authority to "stop, detain, and investigate" a motorist *after* they commit a violation of the Vehicle Code in the sheriff's presence. This is not so in section 6308(b) as that section authorizes "police officers" to conduct a sobriety checkpoint involving an *investigation* of drivers *before* it is determined that they have violated the Vehicle Code.