**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Edward HANNON, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 7, 2003.

Filed Nov. 25, 2003.

**552**

Leslie F. Ditlow, Doylestown, for appellant.

Stephen B. Harris, Asst. Dist. Atty., Doylestown, for Com., appellee.

BEFORE: STEVENS, OLSZEWSKI, and BECK, JJ.

OPINION BY OLSZEWSKI, J.:

¶ 1 Edward Hannon (appellant/defendant) was convicted of robbery (two counts), theft, simple assault, and possession of marijuana after a bench trial in the Court of Common Pleas of Bucks County (Thomas, J.). These convictions were the result of events which occurred on March 21, 2002, at a Wawa store in Morrisville.

¶ 2 The lower court aptly summarized the facts, and we reproduce the relevant portions below.

In the early morning hours of March 21, 2002[,] Officer Langan of the Falls Township Police Department received a radio transmission regarding a robbery committed at the Wawa located at 1244 Bristol Pike in Morrisville, Pennsylvania. N.T., 3/10/03, p. 5. The Bucks County radio transmission described the perpetrator as male who stood 5'11" to 6' and wore camouflage shirt and pants, beige or brown suede shoes, and a hooded mask. N.T., 3/10/03, p. 18, 21–22.

Upon arriving at the Wawa, Officer Langan went into the store and spoke to two employees who informed him that they had just been robbed at gunpoint. N.T., 3/10/03, p. 6. While Officer Langan was securing the scene outside of the store, a blue car pulled up and a woman got out of the car. N.T., 3/10/03, p. 6. When Officer Langan asked the employees if she was the manager, they informed him that this woman, Wendy Wilson, was a customer in the store during the robbery and left to go after the perpetrator. N.T., 3/10/03, p. 6. The woman walked quickly past Officer

Langan toward the store and stated to him "He's in my car." N.T., 3/10/03, p. 7. When Officer Langan ran into the store after her and asked who was in her car, she replied "the guy who just robbed the Wawa is in my car." N.T., 3/10/03, p. 7. She announced the same to the employees, and then added that she told the Defendant that she was buying cigarettes. N.T., 3/10/03, p. 23.

Officer Langan left the store and told Detective Martin what the woman just said. N.T., 3/10/03, p. 7. At that point, Officer Langan and Detective Martin approached the blue car and saw the Defendant slumped down in the front passenger seat with his head lowered. N.T., 3/10/03, p. 7. Defendant was not wearing camouflage at this time. N.T., 3/10/03, p. 18–19. Officer Langan ordered the Defendant out of the car at· gunpoint. N.T., 3/10/03, p. 8. Defendant was handcuffed, taken into custody, and searched for a weapon by Officer Langan. N.T., 3/10/03, p. 9, 14. Officer Langan removed $325.83 from Defendant's right pants pocket, including 25 one-dollar bills wrapped in a bundle. N.T., 3/10/03, p. 9. Additionally, two small ziplock baggies containing marijuana, and some loose marijuana were found in Defendant's left pants pocket. N.T., 3/10/03, p. 9. Defendant was then placed in the police car. N.T., 3/10/03, p. 9, 17. Detective Martin brought the two Wawa employees outside, but they could not identify Defendant as the perpetrator. N.T., 3/10/03, p. 19. Defendant was later taken to the Falls Township police headquarters. N.T., 3/10/03, p. 9.

Trial Court Opinion, 5/9/03, at 1–2. Thereafter, appellant spoke with the police and confessed.

¶ 3 Appellant claims that the police illegally obtained the evidence found in his pockets. Particularly, appellant claims that the lower court erred when it found that (1) he was arrested when he was handcuffed at gunpoint and placed in the back of a police vehicle, and (2) the police had probable cause to support his arrest. While appellant concedes that the police had *reasonable suspicion* to sufficiently subject him to an investigative detention and frisk pursuant to *Terry v. Ohio* (392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)), he argues that the detention did not amount to an arrest and the search of his person was outside the scope of an investigative detention. Accordingly, the questions we must address are whether appellant was under arrest at the time of the search and, if so, whether the arrest was supported by probable cause. We answer both of these questions affirmatively; therefore, we need not determine whether the search was outside the scope of a *Terry* frisk.

¶ 4 When reviewing a motion to suppress evidence, our scope of review is well established.

> [W]e consider whether the record supports the suppression court's factual findings, and the legal conclusions drawn therefrom, by reviewing the prosecution's evidence and only so much of the defense's evidence as remains uncontradicted within the context of the record as a whole. Factual findings unsupported by the evidence may be rejected, but if the record supports the suppression court's factual findings, reversal of a suppression court's actions is justified only if the inferences and legal conclusions drawn therefrom are erroneous.

*Commonwealth v. Stackfield*, 438 Pa.Super. 88, 651 A.2d 558, 559 (1994) (citations omitted). We find that the evidence supports the lower court's conclusion; therefore, we affirm the decision of the lower court.

¶ 5 Appellant, the Commonwealth, and the lower court cite to *Commonwealth v. Lovette* (498 Pa. 665, 450 A.2d 975 (1982)) to define "arrest". There is some confusion, however, over the language of the definition. *Lovette* states that an arrest is "any act that indicates an intention to take the person into custody *and* subjects him to the actual control and will of the person making the arrest." *Lovette,* 450 A.2d at 978 (citations omitted) (emphasis added). *See also Commonwealth v. Conde,* 822 A.2d 45, 53–54 (Pa.Super.2003) (Bender, J., concurring) (*citing Commonwealth v. Butler,* 729 A.2d 1134, 1137 (Pa.Super.1999)). As written, the test is conjunctive. Other decisions, however, have used a disjunctive test. "Arrest is an act that indicates an intention to take a person into custody *or* that subjects the person to the will and control of the person making the arrest." *Commonwealth v. Gwynn,* 555 Pa. 86, 723 A.2d 143, 148 (1999) (*citing Lovette* ) (emphasis added). *See also Commonwealth v. Turner,* 772 A.2d 970, 974 (Pa.Super.2001).

¶ 6 It is unclear from the cases which language is the correct language. We will therefore use the conjunctive test because it affords the criminal defendant the most protection. We note, however, that the use of a disjunctive test would require us to call an investigative detention an "arrest" because "every *Terry* stop involves both a stop and a period of detention during which the suspect is not free to leave but is subject to the control of the police officer." *Commonwealth v. White,* 358 Pa.Super. 120, 516 A.2d 1211, 1217 (1986). Despite the use of the conjunctive test, appellant's argument fails.

¶ 7 Under the conjunctive test, an arrest exists when (1) the police intended to take appellant into custody, and (2) appellant was subjected to the actual control and will of the police. *Lovette,* 450 A.2d at 978. This test is an objective test, and all circumstances must be viewed "in the light of the reasonable impression conveyed to the person subjected to the seizure." *Commonwealth v. Butler,* 729 A.2d 1134, 1137 (Pa.Super.1999); *Commonwealth v. Douglass,* 372 Pa.Super. 227, 539 A.2d 412, 419 (1988).

¶ 8 The facts indicate that the police drew their weapons, ordered appellant out of the car, immediately restrained him with handcuffs, searched him, placed him in a police vehicle, and eventually transported him to the police station where *Miranda* warnings were given and an interrogation took place. A person subjected to this seizure would reasonably believe that he was under the control of the police and that the police intended to take him into custody when he was ordered out of the car at gunpoint and restrained with handcuffs.

¶ 9 The fact that the police did not call the detention at the Wawa an arrest is irrelevant. "Officers are not required to make any formal declaration of arrest or use the word 'arrest' ". *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304, 311 (1963).

¶ 10 In light of the above facts, appellant was placed under arrest at the scene.

¶ 11 The next question is whether the police had probable cause to arrest appellant. Probable cause is determined by considering the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Under the totality of the circumstances,

a police officer must make a practical common sense decision whether, given all of the circumstances known to him at that time, including hearsay information, there is a fair probability that a crime was committed and that the suspect committed the crime.

*Commonwealth v. Butler,* 354 Pa.Super. 533, 512 A.2d 667, 669–70 (1986). Applying this test, we agree with the lower court that there was probable cause to arrest appellant.

¶ 12 The facts of our case are similar to those in *Butler,* where probable cause was found to have existed. In *Butler,* the defendant had grabbed gold necklaces off the neck of the victim. Upon hearing the victim's screams, an unidentified male youth, seeing the defendant flee, gave chase. Once the defendant stopped, the youth returned to the victim. The police arrived by this time and the youth took the police to the location of the defendant. Once there, the police observed the defendant behind a wall looking at a gold chain. *Butler,* 512 A.2d at 669. We affirmed the lower court's finding of probable cause, and stated that "it is reasonable to infer that the youth saw the person fleeing from the scene and assumed that individual was the perpetrator." *Butler,* 512 A.2d at 670.

¶ 13 In the instant case, immediately after the perpetrator left, a female customer in the store during the robbery decided to follow the perpetrator. After pursuing and successfully stopping the perpetrator, she persuaded him to join her in her car. She then drove back to the Wawa store. The woman then entered the store and told the officers that "the guy who just robbed the WaWa" was in her car. N.T., 3/10/03 at 7. The police looked at the man in her car and observed appellant crouched down in the passenger seat. The fact that appellant was not wearing the camouflage clothing at the time of his arrest is not fatal to the Commonwealth's argument because under the totality of the circumstances, there were sufficient facts to establish probable cause.

¶ 14 Since probable cause existed to arrest appellant, and appellant's person was searched incident to a legal arrest, the evidence obtained from a search of appellant's pockets was properly admitted. *Commonwealth v. Frank,* 407 Pa.Super. 500, 595 A.2d 1258, 1260 (1991); *Commonwealth v. Santiago,* 220 Pa.Super. 111, 283 A.2d 709, 711 (1971). We therefore affirm appellant's conviction and sentence.

¶ 15 Judgment of sentence AFFIRMED.