COMMONWEALTH of Pennsylvania,
Appellee

v.

Albert LEONBERGER, Appellant.

Superior Court of Pennsylvania.

Argued May 2, 2007.
Filed Aug. 27, 2007.

Charissa J. Liller, New Hope, for appellant.

Stephen B. Harris, Asst. Dist. Atty., Doylestown, for the Com., appellee.

BEFORE: TODD, J., McEWEN, P.J.E., and JOHNSON, J.

OPINION BY JOHNSON, J.:

¶ 1 Albert Leonberger appeals from the judgment of sentence entered following his convictions of aggravated harassment by a prisoner, resisting arrest and disorderly conduct. *See* 18 Pa.C.S. §§ 2703.1, 5104, 5503 (respectively). Leonberger asserts that the evidence was insufficient to establish his convictions of aggravated harassment by a prisoner and resisting arrest.

Leonberger also contends that the trial court provided erroneous jury instructions when it charged the jury on the crimes of aggravated harassment by a prisoner and resisting arrest. We conclude that the evidence was insufficient to support Leonberger's conviction of aggravated harassment by a prisoner. We find no merit in any of Leonberger's remaining contentions. Accordingly, we affirm in part, reverse in part and remand for re-sentencing.

¶ 2 On October 16, 2005, Jamie Lynskey awoke around 3:00 a.m. to yelling outside of her house at 20 Rolling Lane, in Levittown, Bucks County. Lynskey looked out her window and saw a jeep parked in the middle of the street and two men in her front yard rolling around on the grass. Lynskey called 911, and Officer Douglas Slemmer of the Bristol Township Police Department arrived shortly thereafter, observing Leonberger and a companion, Wayne Fowler, standing at the rear of a jeep. Officer Slemmer noticed blood on both men and testified that they appeared highly intoxicated and displayed signs of having been in a fight. Officer Slemmer got out of his police cruiser and told Fowler to sit down on the curb. Fowler refused, approached the officer and took two swings at him. In turn, Officer Slemmer took out his pepper spray and backed away from the jeep, repeating his direction that Fowler sit on the curb. Leonberger then walked towards the officer, and while reaching inside his waistband, said "Who are you going to spray? I'm going to fuck you up." Fearing that Leonberger was reaching for a weapon, Officer Slemmer retreated behind his police cruiser, called for backup on his radio, pulled out his service weapon, and ordered Leonberger to take his hand out of his waistband. Leonberger did not comply and continued to approach and curse at the officer.

¶ 3 In an attempt to subdue Leonberger, Officer Slemmer ran up to Leonberger and sprayed him with pepper spray. As a result, Leonberger rubbed his eyes and nose and Officer Slemmer kicked him in the midsection, causing Leonberger to fall to the ground. Leonberger fell on his back and started kicking in the air, hitting Officer Slemmer with one of his feet and forcing him to back away. Leonberger got up on his knees and put his hand back into his waistband, and Officer Slemmer again drew his gun and repeated his warnings to Leonberger. At this time, Officer John Slattery arrived at the scene, ran towards Leonberger and forced him facedown on the road. Leonberger and Officer Slattery wrestled on the ground as the officer tried to handcuff him. Leonberger used leg sweeps, kicking Officer Slattery in the thighs and knocking him to the ground. Officer Slemmer then rejoined the brawl and used his ASP baton to strike Leonberger's arms several times. The two officers finally handcuffed Leonberger and carried him into Officer Slemmer's police cruiser.

¶ 4 Officer Slemmer transported Leonberger to Lower Bucks Hospital so that Leonberger could receive medical treatment for his injuries. Upon arriving at the hospital, Officer Slemmer opened the back door of the police cruiser, whereupon Leonberger began spitting and kicking at the officer. With the help of a fellow officer and hospital staff, Officer Slemmer placed Leonberger, still handcuffed, on a stretcher. As the nurses wheeled Leonberger into the hospital, he repeatedly spat blood at everyone around him. The officers and hospital staff placed a mask over Leonberger's face, fastened restraint straps and gave him a sedative. After Leonberger received treatment for lacerations and a contusion, the police placed him in a police cruiser and transported him to the Bristol Township police headquarters for detention in a holding cell.

Since the police arrested Leonberger without a warrant for various felonies and misdemeanors, he was detained in a police lockup for the remainder of the early morning hours and then was taken before a magisterial district judge for a preliminary arraignment.

¶ 5 The criminal complaint charged Leonberger with four counts of aggravated assault, three counts of disorderly conduct, and one count each of aggravated harassment by a prisoner, public drunkenness, terroristic threats and resisting arrest. The case proceeded to a jury trial. At the conclusion of the Commonwealth's case, Leonberger made a motion for demurrer and the trial court dismissed the charge of terroristic threats. The remaining charges went to the jury for deliberation. After being instructed on the elements of the charges, the jury requested that the trial court re-instruct them on the elements of resisting arrest, aggravated assault and aggravated harassment by a prisoner. The jury also requested that the trial court provide them with an explanation of when a person is considered to be "under arrest." The trial court re-instructed the jury and presented them with some general, background law regarding an "arrest" and provided them with the details of one of this Court's previous decisions. On March 29, 2006, the jury found Leonberger guilty of aggravated harassment by prisoner, resisting arrest, public drunkenness and disorderly conduct. The jury found Leonberger not guilty of all four counts of aggravated assault. On April 17, 2006, the trial court sentenced Leonberger to four to twenty-three months' imprisonment along with a concurrent sentence of two years' probation for resisting arrest. The trial court did not impose further sentence on the disorderly conduct and public drunkenness convictions.

¶ 6 Leonberger now appeals to this Court, raising the following questions for our review:

A. Did the Commonwealth present sufficient evidence to support Defendant's conviction for aggravated harassment by prisoner?

B. Did the Commonwealth present sufficient evidence to support Defendant's conviction for resisting arrest?

C. Did the Trial Court erroneously instruct the jury on the charges for aggravated harassment by prisoner and resisting arrest, thereby causing prejudice to Defendant?

Brief for Appellant at 2.

¶ 7 Leonberger's first two questions challenge the sufficiency of the evidence for his convictions of aggravated harassment by a prisoner and resisting arrest.

The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the factfinder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Lambert*, 795 A.2d 1010, 1014–15 (Pa.Super.2002) (*en banc*) (internal citations, quotation marks and brackets omitted).

¶ 8 In his first question, Leonberger contends that the Commonwealth failed to establish the requisite elements of the crime of aggravated harassment by a prisoner. Brief for Appellant at 9. Particularly, Leonberger asserts that the language of 18 Pa.C.S. section 2703.1 expressly limits aggravated harassment by a prisoner to situations where the prisoner spits on an officer while "confined or committed" in a statutorily prescribed "facility or institution" or when being transported to or from that "facility or institution." Brief for Appellant at 9. Leonberger claims that he spat at the officers at a local hospital where he was transported following his arrest in a residential neighborhood. Brief for Appellant at 11. Therefore, Leonberger argues, the Commonwealth failed to provide any evidence that he was "confined or committed to any sort of detention facility when the spitting occurred and . . . could not have been in transport to . . . such a facility to which he was detained." Brief for Appellant at 13. Leonberger concludes accordingly that the evidence was insufficient to support his conviction. Brief for Appellant at 13. After review of the facts of this case and the relevant statute, we agree with Leonberger that the Commonwealth failed to proffer sufficient evidence to convict him of aggravated harassment by a prisoner.

¶ 9 The Crimes Code defines aggravated harassment by a prisoner as follows:

A person who is confined in or committed to any local or county detention facility, jail or prison or any State penal or correctional institution or other State penal or correctional facility located in this Commonwealth commits a felony of the third degree if he, while so confined or committed or while undergoing transportation to or from such an institution or facility in or to which he was confined or committed, intentionally or knowingly causes or attempts to cause another to come into contact with blood, seminal fluid, saliva, urine or feces by throwing, tossing, spitting or expelling such fluid or material.

18 Pa.C.S. § 2703.1. Issues involving statutory interpretation present questions of law for which our standard of review is *de novo* and our scope of review is plenary. *See Kopko v. Miller*, 586 Pa. 170, 892 A.2d 766, 770 (2006). "In construing a statute to determine its meaning, courts must first determine whether the issue may be resolved by reference to the express language of the statute, which is to be read according to the plain meaning of the words." *Commonwealth v. Lopez*, 444 Pa.Super. 206, 663 A.2d 746, 748 (1995).

¶ 10 In concluding that the evidence was sufficient to support a finding that Leonberger was confined in or undergoing transportation to a local detention facility, the trial court provided the following rationale:

The record proves police held the Appellant at a detention facility. The testimony of Officer Slemmer expressly states that he took Appellant to the Bristol Township police headquarters for holding and processing until he could be taken before the appropriate issuing authority. The police would have immediately taken Appellant to this detention facility but for the injuries Appellant suffered as a result of his fight with Mr. Fowler and his extreme conduct in fighting with police. Police properly chose to arrange for Appellant to receive proper medical attention. We perceive that the jury had ample evidence upon which to conclude that from the time of his arrest on, Appellant was either confined in or undergoing transportation to or from a local detention facility.

Trial Court Opinion (T.C.O.), 11/20/06, at 7–8.

¶ 11 Contrary to the trial court's conclusion, a plain reading of the statute indicates that in order to be convicted of aggravated harassment by a prisoner, a person must *first* be confined in or committed to a statutorily listed "institution" or "facility." By its very language, section 2703.1 only applies if a person engages in the statutorily prohibited acts while either (1) confined in or committed to an "institution" or "facility," or (2) in transportation to or from the "institution" or "facility" in which he/she was confined or committed. The fact that Leonberger spat on the officers when they stopped at a hospital, en route to a "local detention facility" for the first time, is irrelevant, because the statute, as a threshold matter, only covers transportation to a "facility" in which Leonberger was already confined. *See* 18 Pa.C.S. § 2703.1 ("... while undergoing transportation to ... such an institution or facility in ... which he *was* confined or committed ...") (emphasis added). Stated another way, the statute does not apply during the initial trip to a "detention facility;" rather, it is strictly limited to transportation to or from a "detention facility" *after* a person has been confined in or committed to that "detention facility." The trial court, therefore, erred in concluding that Leon-

berger was in transportation to a local detention facility for purposes of section 2703.1 since the time following his arrest. Upon our review of the record, we conclude that the Commonwealth did not adduce any evidence that Leonberger spat on the officers while in the course of being transported to or from a "facility" or "institution" in which he was previously "confined or committed."

¶ 12 Because the Commonwealth failed to prove that Leonberger spat on the officers while undergoing transportation to a place of prior detention, an aggravated assault by a prisoner conviction can only be established if the Commonwealth demonstrated that Leonberger spat on the officers while he was "confined in or committed to" a "local or county detention facility" or a "State penal or correctional institution." 18 Pa.C.S. § 2703.1. This inquiry, in turn, depends on whether Lower Bucks Hospital, the place where the spitting occurred, can be deemed a "detention facility" or a "correctional institution" under the statute. We conclude that in these particular circumstances it cannot.

¶ 13 Here, the officers testified that Leonberger spat at them when Officer Slemmer opened the door to his patrol vehicle upon arriving at the hospital and also in the entryway of the emergency room. Notes of Testimony (N.T.), 3/28/06, at 77–78, 120–23. The Commonwealth did not present any evidence that the hospital itself was a "local detention facility" or that Leonberger spat at the officer while he was confined in or committed to any sort of detention facility within the hospital. *Cf. Commonwealth v. Clark,* 761 A.2d 190, 191–93 (Pa.Super.2000) (concluding that when the officers placed the appellant in a police station holding cell, the appellant was confined in a "local or county detention facility" under 18 Pa.C.S. section

2703.1). Moreover, the Commonwealth failed to demonstrate that Leonberger was "confined in or committed to" a "State penal or correctional institution." The Commonwealth did not offer any evidence that the hospital possessed the essential characteristics of a "State penal or correctional institution" or that the hospital was affiliated with the state in such a manner that it could be considered a "State penal or correctional institution." *Cf. Commonwealth v. Kirklin,* 57 Pa. D. & C.4th 362, 365–68 (Com.Pl.,Lawrence Co.2002) (concluding that defendant juvenile was committed to a "State correctional institution" when a court ordered him to a youth development center for rehabilitative purposes). Therefore, even when viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we conclude that it was insufficient as a matter of law to convict Leonberger of aggravated harassment by a prisoner. Although we expressly disapprove of Leonberger's conduct, we are not at liberty to alter the plain language of the statute. As such, we reverse Leonberger's conviction of aggravated harassment by a prisoner.

¶ 14 In his second question, Leonberger contends that the evidence was insufficient to establish his conviction of resisting arrest because the Commonwealth did not demonstrate that the underlying arrest was lawful. Brief for Appellant at 14. Under the Crimes Code, a person commits resisting arrest when "with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S. § 5104. Although Leonberger's second question is couched in terms of a sufficiency challenge, he essentially claims that the

trial court erred in allowing the jury to decide the question of the lawfulness of the underlying arrest. Brief for Appellant at 14 (citing *Commonwealth v. Miller*, 303 Pa.Super. 504, 450 A.2d 40, 42 (1982)). While Leonberger is correct in stating that it is the trial court and not the jury who must determine the lawfulness of the arrest, he fails to provide citation to authority pertinent to his sufficiency claim. Moreover, in the mere two sentences that constitute his entire legal analysis, Leonberger does not explain why his arrest was unlawful or how the evidence was insufficient to support his conviction. Therefore, we conclude that Leonberger's second question is waived due to its lack of development. *See Commonwealth v. Bobin*, 916 A.2d 1164, 1168 (Pa.Super.2007) (concluding that claim is waived where argument supporting it is "markedly insufficient, amounting to less than one half page and containing no analysis or case citation."); *Commonwealth v. Hakala*, 900 A.2d 404, 407 (Pa.Super.2006) ("Because Hakala fails to offer either analysis or case citation in support of the relief he seeks, we deem all of his questions waived.").

¶ 15 In his third question, Leonberger contends that the trial court gave erroneous jury instructions for the crimes of aggravated harassment by a prisoner and resisting arrest, thus causing him prejudice. Brief for Appellant at 14. Since we previously concluded that the evidence was insufficient to establish Leonberger's aggravated harassment by a prisoner conviction, it is unnecessary to analyze the jury instructions pertaining to this conviction. Consequently, we will only address Leonberger's question to the extent that it pertains to the trial court's jury instructions on the charge of resisting arrest.

¶ 16 Leonberger claims that the trial court committed reversible error when it defined the concept of an "arrest"

for the jury following their explicit request that the trial court do so. Brief for Appellant at 19. *See* N.T., 3/29/06, at 155 ("You asked can a person assume he's under arrest due to a police officer's actions, or must the person be told verbally he's under arrest."). According to Leonberger, the trial court's "excessive explanation of the phrase 'arrest' was so convoluted" that it did not clarify any issues for the jury and did not sufficiently convey the rules of law applicable to the case. Brief for Appellant at 20. Leonberger further argues that the trial court prejudiced him in describing the term "arrest," because the trial court read a portion of *Commonwealth v. Hannon*, 837 A.2d 551 (Pa.Super.2003), and informed the jury that it was a case in which this Court determined that an "arrest" occurred. Brief for Appellant at 20. Leonberger acknowledges that under *Commonwealth v. Jones*, 858 A.2d 1198, 1202–03 (Pa.Super.2004), a trial court can rely on illustrations to explain legal concepts to the jury if the illustration accurately conveys the law, but argues that the trial court erred because its illustration involved the "facts" of an actual case and was not in the "abstract." Brief for Appellant at 20–21. For these reasons, Leonberger concludes that the trial court ultimately "imposed on the province of the jury as fact-finders[.]" Brief for Appellant at 21. We disagree.

[W]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper.... [I]t is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate

statement of the law is there reversible error.

■ *Commonwealth v. Kerrigan,* 920 A.2d 190, 198 (Pa.Super.2007) (citations and internal quotation marks omitted). "When a jury submits a question to the court indicating a need to have a matter clarified, the court may properly respond thereto." *Jones,* 858 A.2d at 1202 (citation omitted). It is also well known that "[m]any trial judges employ concrete illustrations to help make clear to the jury … issues … the jury is to decide and how to apply legal principles to the facts so as to reach a just verdict." *Id.* (citation omitted).

¶ 17 In this case, the jury asked the trial court two questions after the trial court issued the standard instructions on resisting arrest and aggravated harassment by a prisoner: (1) "was the defendant told he was under arrest; if so, at what point and by whom[?]" and (2) "can a person assume he's under arrest due to a police officer's actions, or must a person be told verbally that he's under arrest[?]" N.T., 3/29/06, at 145, 155. In response, the trial court declined to answer the jury's first inquiry on the ground that it was a matter for them to decide and then informed the jury with background law describing how an "arrest" can occur, including a specific account of the facts and result of *Hannon.* N.T., 3/29/06, at 145, 156–161. Besides making broad, sweeping claims of "prejudice" and "jury confusion," Leonberger does not articulate precisely how the trial court's explanation of an "arrest" and reliance on *Hannon* did not accurately convey the law. After our review of the trial transcripts, we cannot find any basis upon which to conclude that the trial court's instructions confused the jury or prejudiced Leonberger. As Leonberger does not cite to any case law to support his contention and provides only bald allegations of prejudice and jury confusion, we

conclude that he has failed to meet his burden of persuading us that the trial court committed reversible error. *See Commonwealth v. Thomas,* 909 A.2d 860, 862 (Pa.Super.2006) ("It is the Appellant who has the burden of establishing his entitlement to relief by showing that the ruling of the trial court is erroneous under the evidence or the law.") (citation omitted); *Commonwealth v. Birdseye,* 432 Pa.Super. 167, 637 A.2d 1036, 1043 (1994) ("[T]he Birdseyes cite to various pages in the trial transcript, but in essence ask that we develop an argument for them. It is not this Court's function or duty to become an advocate for the appellants."). Therefore, we conclude that Leonberger's third question does not entitle him to relief.

¶ 18 For the stated reasons, we reverse Leonberger's conviction of aggravated harassment by a prisoner, affirm his convictions of resisting arrest, public drunkenness, and disorderly conduct, and remand for the trial court to conduct re-sentencing. *See Commonwealth v. Goldhammer,* 512 Pa. 587, 517 A.2d 1280, 1283 (1986) (discussing the propriety of remand for re-sentencing when the appellant successfully challenges on appeal one of the multiple crimes for which he/she was convicted); *Commonwealth v. Vanderlin,* 398 Pa.Super. 21, 580 A.2d 820, 831 (1990) (stating that where the appellate court cannot determine whether its vacation of sentence on one count would affect the trial court's sentencing on the remaining counts, the trial court must be given an opportunity on remand to reconsider sentencing).

¶ 19 Judgment of sentence **AFFIRMED** in part, **REVERSED** in part. Case **REMANDED** for re-sentencing. Jurisdiction **RELINQUISHED.**

¶ 20 McEWEN, P.J.E., files a Concurring and Dissenting Statement.

CONCURRING AND DISSENTING
STATEMENT BY McEWEN, P.J.E.:

¶ 1 Since the author of the majority opinion has, in his usual fashion, undertaken a careful analysis of the issues presented in this appeal, and has proceeded to a perceptive expression of position, I join in the opinion, with the exception that I would affirm the judgment of sentence upon the conviction for aggravated harassment by a prisoner. I would do so since appellant was "confined" (as the majority notes, the police and hospital personnel were required to subdue appellant, employ restraint straps and a protective face mask, and to sedate appellant), and the hospital was thereby a local detention facility. It strikes me that the General Assembly could not have intended to present to appellant a pass from conviction for aggravated harassment in a situation where the police provided for treatment of the prisoner instead of transporting him to the police building and impressing upon him the untoward consequences of a considerable delay in securing medical personnel to provide treatment of the injuries.

¶ 2 Thus, I would affirm the judgment of sentence in its entirety.