J. S63036/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | No. 549 WDA 2017 |
| | : | |
| LARRY PLOVETSKY | : | |

Appeal from the Order, March 21, 2017,
in the Court of Common Pleas of Indiana County
Criminal Division at No. CP-32-CR-0000795-2016

BEFORE:  BOWES, J., SOLANO, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED NOVEMBER 29, 2017**

This case concerns a motion to suppress evidence obtained from a chemical blood draw.  Herein, the Commonwealth appeals from the order of March 21, 2017,[1] that granted Larry Scott Plovetsky's ("appellee's") omnibus pre-trial motion.  After careful review, we affirm.[2]

The suppression court provided the following factual history:

---

[1] The order was dated March 17, 2017, but was docketed on March 21, 2017.

[2] The Commonwealth may appeal an interlocutory order suppressing evidence when it provides a certification with its notice of appeal that the order terminates or substantially handicaps the prosecution. **Commonwealth v. Whitlock**, 69 A.3d 635, 636 n.2 (Pa.Super. 2013), citing Pa.R.A.P. 311(d).  In **Commonwealth v. Gordon**, 673 A.2d 866, 869 (Pa. 1996), our supreme court held that the Commonwealth may appeal the grant of a defense motion **in limine** that excludes Commonwealth evidence and has the effect of substantially handicapping the prosecution.  As the trial court ruling excludes Commonwealth evidence, and the Commonwealth has certified that the effect of the ruling substantially handicaps the prosecution, we find that this appeal is properly before this court.

On November 19, 2016, a two-vehicle accident occurred at the intersection of Old William Penn Highway and Strangford Road in Burrell Township, Indiana County. As a result of this accident, Clara Santus was killed. Ms. Santus was the operator of a vehicle traveling east on Old William Penn Highway. It is alleged by the Pennsylvania State Police and the Commonwealth that [appellee] was the operator of a vehicle that turned into Ms. Santus' lane of travel, causing the accident.

Following the accident, Trooper Garrett Padasak of the Pennsylvania State Police was the first Law Enforcement Officer to arrive at the scene. EMS and the Fire Department had [preceded] his arrival. Trooper Padasak talked with [appellee] at the scene in an effort to determine if he was impaired in any way. Trooper Padasak testified that he observed [appellee's] eyes and speech and looked for other signs of impairment. He further testified that [appellee] did not appear to be impaired. [Appellee] told the trooper, in regards to the accident, that he did not see the car before he turned. Thereafter, other members of the Pennsylvania State Police [a]rrived at the scene, including Trooper Gregory Lentz and Corporal Op De Beeck.

At some point, a conversation between the police officers in the presence of [appellee] took place in regards to [appellee] voluntarily undergoing a blood test at Indiana Regional Medical Center. The officers had no evidence of impairment in regards to [appellee], however, they informed him that there could be civil ramifications from the accident and suggested to him that it would be in his best interest to obtain a blood test.

[Appellee] contacted a friend and obtained a ride to the Indiana Regional Medical Center for the purposes of voluntarily undergoing a blood test. At some point after [appellee's] arrival at the hospital, Trooper Eric Smith arrived at the hospital. Trooper Smith testified that he was there because he was assisting in the crash investigation and to get a

voluntary blood draw from [appellee]. He indicated that he was sent there by the dispatcher. He did not know [appellee] was not under arrest at that time.

While at the Indiana Regional Medical Center, Trooper Smith entered [appellee's] room, spoke with [appellee] and read to him the DL 26 Form, also known as the [*O'Connell* w]arnings, *Commonwealth,* [*Dep't.*] *of* [*Trans.*]*, Bureau of Traffic Safety v. O'Connell*[,] 555 A.2d 873 ([Pa. ]1989); *Commonwealth,* [*Dep't.*] *of* [*Trans.*]*, Bureau of Licensing v. Scott*[,] 684 A.2d 539 ([Pa. ]1996). He indicated he read the form as protocol for the Pennsylvania State Police. He indicated that [appellee] signed and consented to the blood draw. He indicated that he spoke briefly to [appellee] and [appellee] informed him that he wanted the blood draw to show that he was not under the influence.

As part of the [*O'Connell* w]arnings, Trooper Smith informed [appellee] that he was under arrest for driving under the influence. The Trooper also informed [appellee] of the consequences of a refusal. Specifically, the enhanced penalties resulting from a refusal.

Trial court opinion and order, 3/17/17 at 1-2.

Appellee's blood tested positive for THC, a chemical found in marijuana. (Notes of testimony, 2/28/17 at 14.) The Commonwealth charged appellee with homicide by vehicle while driving under the influence, accidents involving death/injury while not properly licensed, DUI: controlled substance/schedule I--first offense, driving without a license, operating a vehicle without required financial responsibility, disregard traffic lane, vehicle

turning left, and careless driving[3] on April 27, 2016. All charges were held over for court following a preliminary hearing on August 3, 2016.

On January 12, 2017, appellee filed a motion for extraordinary relief to suppress the results of the chemical blood draw taken on November 19, 2016, based on the Supreme Court of the United States' decision in ***Birchfield v. North Dakota***, 136 S.Ct. 2160 (2016). On January 25, 2017, the Commonwealth filed a motion to amend the information to add the charge of vehicular homicide.[4] On February 28, 2017, the suppression court held a hearing on both motions. Immediately after the hearing, the suppression court granted the Commonwealth's motion to amend the information. On March 17, 2017, the trial court granted appellee's motion to suppress the results of the chemical blood draw.

The Commonwealth filed a notice of appeal on April 3, 2017, and on April 5, 2017, the suppression court ordered the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa. R.A.P. 1925(b). The Commonwealth timely complied on April 26, 2017. The suppression court filed an opinion pursuant to Pa. R.A.P. 1925(a) on June 1, 2017.

The Commonwealth raises the following issues for our review:

---

[3] 75 Pa.C.S.A. §§ 3735(a), 3742.1(a), 3802(d)(1)(i), 1501(a), 1786(f), 3309(1), 3322, and 3714(a), respectively.

[4] 75 Pa.C.S.A. § 3732(a).

> I.   Whether the Suppression Court erred in law and/or abused its discretion in granting Appellee's Motion to Suppress blood evidence where Appellee was not subject to an illegal arrest lacking probable cause.
>
> II.  Whether the Suppression Court erred in law and/or abused its discretion in granting Appellee's Motion to Suppress pursuant to the United States Supreme Court decision in ***Birchfield v. North Dakota***, where Appellee voluntarily, and without coercion, consented to a blood draw for the purposes of avoiding civil liability and not while under arrest and/or in the custody of law enforcement.
>
> III. Whether the Suppression Court erred in law and/or abused its discretion in finding that Trooper Smith did not tell Appellee that reading the DL-26 form was a matter of protocol where evidence and testimony presented during the Suppression Hearing indicated Appellee was so informed.

Commonwealth's brief at 4.

We begin by noting our well-settled standard of review:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

***Commonwealth v. Miller***, 56 A.3d 1276, 1278-1279 (Pa.Super. 2012)

(citations omitted), ***appeal denied***, 70 A.3d 810 (Pa. 2013).

In its first issue for our review, the Commonwealth contends that appellee was not subject to an illegal arrest lacking probable cause. Specifically, the Commonwealth avers that appellee was not under arrest at the time he submitted to chemical blood testing. We must, therefore, conduct two inquiries: (1) whether appellee was subject to arrest; and (2) if appellee was subject to arrest, whether the Pennsylvania State Police had sufficient probable cause to arrest appellee.

Our supreme court has defined an "arrest" as "any act that indicates an intention to take a person into custody and that subjects him to the actual control and will of the person making the arrest." *Commonwealth v. Colon*, 719 A.2d 1099, 1101 n.3 (Pa.Super. 1998), citing *Commonwealth v. White*, 669 A.2d 896 (Pa. 1995), *Commonwealth v. Woodson*, 493 A.2d 78 (Pa. 1995).

In order to determine whether an individual has been placed under arrest, this court utilizes a conjunctive test because it affords the criminal defendant the most protection.

> Under the conjunctive test, an arrest exists when (1) the police intended to take appellant into custody, and (2) appellant was subjected to the actual control and will of the police. [*Commonwealth v. Lovette*, 450 A.2d 975, 978 (Pa. 1982).] This test is an objective test, and all circumstances must be viewed "in the light of the reasonable impression conveyed to the person subjected to the seizure." *Commonwealth v. Butler*, 729 A.2d 1134, 1137 (Pa.Super. 1999), *Commonwealth v. Douglass*, 539 A.2d 412, 419 (Pa.Super. 1988).

*Commonwealth v. Hannon*, 837 A.2d 551, 554 (Pa.Super. 2003), *appeal denied*, 847 A.2d 1279 (Pa. 2004).

The record reflects that Troopers Padasak and Lentz testified that they told appellee that it would "probably be in his best interest" to submit to chemical blood testing due to potential civil consequences--particularly a potential civil cause of action initiated by Ms. Santus' family. (Notes of testimony, 2/28/17 at 32.) Appellee obtained private transportation to the hospital and voluntarily went to the hospital to submit for a blood draw. (*Id.* at 12-13, 24, 33-34.)

Before appellee submitted to a blood draw, Trooper Smith read appellee the DL-26 Form, verbatim, which contained the *O'Connell* warnings. (*Id.* at 25-27, 29.) At the time he read appellee the *O'Connell* warnings, Trooper Smith was in full uniform, including his service belt and service weapon. (*Id.* at 30.) The DL-26 Form contains the following warnings:

> It is my duty as a police officer to inform you of the following:
>
> 1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.
>
> 2. I am requesting that you submit to a chemical test of blood . . . .
>
> 3. If you refuse to submit to the chemical test, your operating privilege will be

suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, you will be suspended for up to 18 months. In addition, if you refuse to submit to the chemical test, and you are convicted of violating Section 3802(a)(1) (relating to impaired driving) of the Vehicle Code, then, because of your refusal, you will be subject to more severe penalties set forth in Section 3804(c) (relating to penalties) of the Vehicle Code. **These are the same penalties that would be imposed if you were convicted of driving with the highest rate of alcohol, which include a minimum of 72 consecutive hours in jail** and a minimum fine of $1,000.00, up to a maximum of five years in jail and a maximum fine of $10,000.

4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to chemical testing, you will have refused the test.

Pa.Dept. of Transp. Form DL-26 (3-12) Form ("DL-26 Form").

Up until Trooper Smith read appellee his ***O'Connell*** warnings, appellee was objectively free to leave the hospital at any time. Moreover, appellee was not subject to arrest at the scene of the accident and could have refused to submit to a chemical blood test altogether. He instead elected to arrange for transportation to the hospital, in an effort to prove that he was

not intoxicated at the time of the accident. (Notes of testimony, 2/28/17 at 25.)

We find that upon Trooper Smith's reading of the DL-26 Form, the reasonable impression conveyed to appellee would have been that he was under arrest, and that he was no longer free to refuse to consent to a chemical blood draw without suffering any potential civil and/or criminal consequences.

We must now determine whether the police had probable cause to place appellee under arrest for driving under the influence. As this court has previously explained:

> Probable cause exists where the officer has knowledge of sufficient facts and circumstances to warrant a prudent person to believe that the driver has been driving under the influence of alcohol or a controlled substance. [**Commonwealth v.**] **Hilliar**, [943 A.2d 984, 994 (Pa.Super. 2008), **appeal denied**, 956 A.2d 432 (Pa. 2008).] Additionally, probable cause justifying a warrantless arrest is determined by a "totality of the circumstances." Furthermore, probable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent [persons] act. **Commonwealth v. Williams**, 941 A.2d 14, 27 (Pa.Super. 2008) (citations and internal quotation marks omitted)

**Commonwealth v. Angel**, 946 A.2d 115, 118 (Pa.Super. 2008).

As stated above, the record reflects that appellee did not exhibit any signs of impairment. Indeed, Troopers Padasak and Lentz repeatedly testified that appellee was not exhibiting any signs of impairment. (Notes of

testimony, 2/28/17 at 8, 9, 19, 32, 35.) The Commonwealth failed to produce any evidence that would warrant a prudent person to believe that appellee had been driving while under the influence of alcohol or a controlled substance.

Accordingly, any evidence obtained as a result of an unlawful arrest must be suppressed.

> The United States Supreme Court has stated that any material, tangible, or verbal evidence "obtained either during or as a direct result of an unlawful invasion" is inadmissible at trial. **Wong Sun v. United States**, 371 U.S. 471, 485 (1963).
>
> Our supreme court further stated:
>
>> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which [the] instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."
>
> **Commonwealth v. Cunningham**, 370 A.2d 1172, 1176-1177 (Pa. 1977), quoting **Wong Sun**, 371 U.S. at 487-488.

**Commonwealth v. Loughnane**, 128 A.3d 806, 815 (Pa.Super. 2015).

Here, we find that while the record reflects that appellee voluntarily consented to a chemical blood draw, the chemical blood draw ceased to be voluntary after appellee was informed by Trooper Smith, as a matter of

"protocol," that he was under arrest for driving under the influence and that he would face a license suspension and/or enhanced civil and criminal penalties if he elected to decline the chemical blood draw. Therefore, we find that appellee was subject to an unlawful arrest, as the Commonwealth has failed to establish that the police had any probable cause to place appellee under arrest. Accordingly, we affirm the suppression court's order suppressing the results from the blood draw. Because that evidence is the fruit of the poisonous tree, we need not address the remaining issues raised by the Commonwealth.

Order affirmed.


Solano, J. joins this Memorandum.

Bowes, J. concurs in the result.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary



Date: <u>11/29/2017</u>