J-S37036-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| TYLER DWAYNE JOHNS, | : | |
| | : | |
| Appellant | : | No. 1628 MDA 2016 |

Appeal from the PCRA Order entered September 23, 2016
in the Court of Common Pleas of Lancaster County,
Criminal Division, No(s): CP-36-CR-0001443-2009

BEFORE: STABILE, MOULTON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED JULY 17, 2017**

Tyler Dwayne Johns ("Johns") appeals from the Order denying his first

Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").

**See** 42 Pa.C.S.A. §§ 9541-9546. We affirm.

This Court previously set forth the relevant underlying facts as follows:

On the afternoon of January 24, 2009, [Johns], who was sixteen
years and eleven months old and a member of a gang, fatally
stabbed Kenyon Wright-Carter [("Victim").] Commonwealth
witness Taisha Rivera [("Rivera")], who was friends with Victim
and knew [Johns], testified at trial to the following. Victim and
[Johns] had an ongoing dispute. [N.T.], 5/3/10, at 71-72. Six
months prior to the stabbing, Rivera was driving a car with
Victim and Victim's cousin, "Booby." **Id.** at 72. [Johns] and his
brother[,] Anthony Johns [("Anthony"),] were in the car behind
them. **Id.** at 73. They stopped to buy marijuana, and Anthony
went to Booby's window and "just started popping off at him[.]"
**Id.** Booby exited the car and engaged in a fist fight with
Anthony. **Id.** [Johns] stepped in to help his brother Anthony,
and Victim helped his cousin Booby, and thus [Johns] and Victim
fought each other. **Id.** at 74.

On the day of the stabbing, Rivera was driving a car, Victim was
in the front passenger seat, and another person, K., was in the

left rear seat; they were seeking to buy marijuana. *Id.* at 80, 81. Rivera parked the car, exited, and asked Anthony, who was standing there, where to buy marijuana. *Id.* at 84. Anthony replied there was none, and Rivera returned to the car. *Id.*

Seated in the car, Rivera saw[,] in her side mirror[,] [Johns] approach them from behind. *Id.* at 83, 85. Anthony asked Victim to open his window to talk. *Id.* at 85. [After] Victim asked Rivera to lower the window, Rivera inserted the key in the ignition, and Victim lowered the window himself. *Id.* at 85-86. [Johns] arrived at the window at that time, opened the door without saying anything, and "jabb[ed] at" Victim ten to fifteen times. *Id.* at 86-88. Rivera did not see Victim reach for his waist or at anything else. [*Id.* at 88-89.] Victim screamed, "[H]e stabbed me," and went to the rear seat with Rivera and K.'s help. *Id.* at 87-89. Anthony then kicked Victim "a couple times," but Victim succeeded in running out of the car, into a house, and back out before lying on the sidewalk. *Id.* at 90-91. Rivera saw Victim was bleeding a lot. *Id.* at 90. K. corroborated Rivera's testimony at trial. *See* [N.T.], 5/4/10, at 147-57.

[Johns] testified to the following. With respect to his prior fight with Victim, it was Booby who "sucker-punched" Anthony. [N.T.], 5/5/10, at 339-40. [Johns] went "to check on" Anthony, and Victim hit him, threatening him. *Id.* at 340. When asked what Victim said, [Johns] stated:

> That is what we already know. We already know that it is with him, and his peoples, his gang. [*sic*]
>
> * * *
>
> Meaning, I took it as, you know, it was a situation at the time and, you know, kind of concerned me because after that, I pretty much knew that I am going to go through problems with these Bloods [gang members].

*Id.* at 340.

Subsequently, there was an incident in which Victim and his friends chased [Johns] with bats. *Id.* at 340-41. [Johns] felt scared "of a possibility something could happen to" him. *Id.* at 341. Then, in early January [] 2009, Victim shot a gun at [Johns] from behind as he was leaving someone's house;

[Johns] hid between two cars, and Victim fled. ***Id.*** at 342. [Johns] stated these events caused him to be scared, but he did not tell his family because he feared police involvement and escalation to "a situation occurring to one of my family member's house [*sic*]." ***Id.***

On the day of the stabbing, [Johns] walked out of his aunt's house and saw a car parked three or four houses away. ***Id.*** at 343. From two to three feet away, [Johns] saw Victim in the car[,] and "pull his hoody up." ***Id.*** at 343-44. [Johns] was "in shock" to see him there because he did not think "the situation would come to a family member's house [*sic*]." ***Id.*** at 344. It was Victim who opened the door, and as he stepped out of the car, he put his hand on his waist under his shirt. ***Id.*** at 344-45. [Johns] believed Victim was reaching for a gun. ***Id.*** at 345. [Johns] described the stabbing as follows: "[I]t happened so fast. [H]e was getting out of the car, … I just went to grab him and that this when we got in the thing and it happened so fast, I can't actually remember how everything happened." ***Id.*** at 344-45. [Johns] then ran into his aunt's car. ***Id.*** at 345-46. He denied having [an] intent to kill Victim. ***Id.*** at 346.

[Johns] filed a [M]otion to transfer his case to the juvenile system. The court held a hearing on December 20, 2009, and denied the [M]otion on April 20, 2010. A five-day jury trial commenced on May 3, 2010. The jury was charged on first-degree murder, third-degree murder, voluntary manslaughter/heat of passion, and voluntary manslaughter/unreasonable mistaken belief. The jury returned a verdict of guilty on third-degree murder[,] and not guilty of the remaining offenses.

***See Commonwealth v. Johns***, 50 A.3d 245 (Pa. Super. 2012) (unpublished memorandum at 1-5) (footnotes omitted).

The trial court sentenced Johns to twenty to forty years in prison. This Court affirmed the judgment of sentence, and the Supreme Court of Pennsylvania denied allowance of appeal. ***See id.***, ***appeal denied***, 63 A.3d 774 (Pa. 2013).

In March 2014, Johns filed a timely *pro se* PCRA Petition. The PCRA court appointed counsel, who filed an Amended PCRA Petition. Following an evidentiary hearing, the PCRA court denied the Petition. Johns filed a timely Notice of Appeal, and a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement.

On appeal, Johns raises the following questions for our review:

A. Whether the [PCRA] court erred in denying [Johns's] Amended PCRA [Petition,] when trial counsel was ineffective by failing to preserve for appellate review the claim that testimony by [Johns's] girlfriend that[,] upon learning of the [V]ictim's grave condition[,] [Johns] cried and prayed with her was relevant and admissible?

B. Whether the [PCRA] court erred in denying [Johns's] Amended PCRA [Petition,] when trial counsel was ineffective by failing to preserve for appellate review the claim that the court improperly instructed the jury concerning the interrelationship between malice and fear in the context of the crimes of murder and voluntary manslaughter?

Brief for Appellant at 4 (some capitalization omitted).

> Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the [PCRA] court's determination and whether its decision is free of legal error. This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. We give no such deference, however, to the [PCRA] court's legal conclusions.

***Commonwealth v. Secreti***, 134 A.3d 77, 79-80 (Pa. Super. 2016) (citations omitted).

As each of Johns's claims involve the ineffective assistance of counsel, to succeed on such a claim, he must demonstrate that

- 4 -

(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

***Commonwealth v. Tharp***, 101 A.3d 736, 747 (Pa. 2014). "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim." ***Commonwealth v. Daniels***, 104 A.3d 267, 281 (Pa. 2014). Counsel is presumed to be effective, and the burden is on the appellant to prove otherwise. ***Commonwealth v. Hanible***, 30 A.3d 426, 439 (Pa. 2011).

In his first claim, Johns contends that his trial counsel was ineffective for failing to preserve a claim regarding the admissibility of testimony by his girlfriend, Marie Gonzalez ("Gonzalez"). Brief for Appellant at 12. Johns argues that Gonzalez's testimony, *i.e.*, that upon learning of Victim's grave condition Johns cried and prayed, was relevant to show his state of mind. *Id.* at 12, 13, 15. Johns further asserts that the testimony was not hearsay. *Id.* at 16-17. Johns claims that trial counsel's failure to "articulate at the time that testimony was proffered that it was admissible to show a lack of malice[,]" caused a waiver of the issue on direct appeal. *Id.* at 14; ***see also id.*** at 12, 15, 18. Johns argues that trial counsel had no reasonable basis for failing to preserve the issue, and that Johns was prejudiced by trial counsel's failure. *Id.* at 17-18.

"Relevance is the threshold for admissibility of evidence." ***Commonwealth v. Tyson***, 119 A.3d 353, 358 (Pa. Super. 2015); ***see also***

Pa.R.E. 402. "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence[,] and the fact is of consequence in determining the action." Pa.R.E. 401; *see also Tyson*, 119 A.3d at 358 (stating that "[e]vidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact."). However, "[t]he court may exclude relevant evidence if its probative value is outweighed by the danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

At trial, Johns sought to introduce Gonzalez's testimony regarding his actions after learning of Victim's grave condition to demonstrate that he did not have the specific intent to kill. N.T., 5/5/10, at 333-34. The Commonwealth objected to the admission of such evidence, arguing that Gonzalez's testimony was irrelevant to establish intent. *Id.* The trial court agreed, and ruled that the evidence was "not relevant to negate [Johns's] fully-formed intent to kill at the time the crime took place, which is the relevant time for determining that intent." *Id.* at 335. Following Johns's acquittal of first-degree murder and conviction of third-degree murder, Johns argued on appeal that Gonzalez's testimony should have been

admitted to demonstrate Johns did not act with malice.[1]  **See Johns**, 50 A.3d 245 (unpublished memorandum at 10-11).  This Court concluded that because Johns did not raise this discrete issue before the trial court, it was waived on appeal.  **See id.** (unpublished memorandum at 11-12).

Here, even if Johns's counsel had raised the claim in the context of malice, Johns would not be entitled to relief.  Indeed, evidence that Johns exhibited remorse about the stabbing and said prayers for Victim is irrelevant in determining whether Johns acted with malice at the time of the stabbing.  **See Commonwealth v. Tillia**, 518 A.2d 1246, 1254 (Pa. Super. 1986) (noting that "[w]hether or not appellant expressed remorse is irrelevant to the determination of guilt."); **see also Fisher**, 80 A.3d at 1191.  Moreover, the evidence presented, including the fact that Johns had stabbed Victim, was sufficient to support a finding of malice.  **See Commonwealth v. Ventura**, 975 A.2d 1128, 1144 (Pa. Super. 2009) (concluding that there was sufficient evidence to prove the appellant committed murder of the third degree where he stabbed the victim in the chest with a knife).  Because Gonzalez's testimony regarding Johns's

---

[1] "[T]o convict a defendant of the offense of third[-]degree murder, the Commonwealth need only prove that the defendant killed another person with malice aforethought." **Commonwealth v. Fisher**, 80 A.3d 1186, 1191 (Pa. 2013) (citation omitted).  "[T]hird[-]degree murder is not a homicide that the Commonwealth must prove was committed with malice and without a specific intent to kill." **Id.** (citation omitted).  "Instead, it is a homicide that the Commonwealth must prove was committed with malice, but one with respect to which the Commonwealth need not prove, nor even address, the presence or absence of a specific intent to kill." **Id.** (citation omitted).

conduct after the stabbing is not relevant to a determination of malice, counsel was not ineffective for failing to raise the claim before the trial court. *See Commonwealth v. Fears*, 86 A.3d 795, 804 (Pa. 2014) (noting that counsel is not ineffective for failing to raise a claim that has no merit).

In his second claim, Johns contends that trial counsel was ineffective for failing to object to an instruction to the jury regarding the interplay between malice and fear. Brief for Appellant at 18. Johns points out that in response to a jury question, the trial judge instructed that "malice and fear are not mutually exclusive." *Id.* at 19. Johns argues that trial counsel did not object to the instruction and this Court subsequently found the issue waived on appeal. *Id.* at 19-20. Johns asserts that there was overwhelming evidence of his fear of Victim, which would have negated a finding of malice. *Id.* at 20. Johns claims that trial counsel had no reasonable basis for failing to object, and Johns was prejudiced by counsel's failure, as there was a reasonable probability he would have been convicted of voluntary manslaughter. *Id.* at 21-22.

> When reviewing a challenge to part of a jury instruction, we must review the jury charge as a whole to determine if it is fair and complete. A trial court has wide discretion in phrasing its jury instructions, and can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury for its consideration. The trial court commits an abuse of discretion only when there is an inaccurate statement of the law.

*Commonwealth v. Baker*, 963 A.2d 495, 507 (Pa. Super. 2008) (citation omitted); *see also Commonwealth v. Davalos*, 779 A.2d 1190, 1195 (Pa.

Super. 2001) (noting that "[t]he scope of supplemental instructions given in response to a jury's request rests within the sound discretion of the trial judge."). "It is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration." **Commonwealth v. Leonberger**, 932 A.2d 218, 224–25 (Pa. Super. 2007) (citation omitted). "[W]here a jury returns on its own motion indicating confusion, the court has the duty to give such additional instructions on the law as the court may think necessary to clarify the jury's doubt or confusion." **Davalos**, 779 A.2d at 1195.

Here, in instructing the jury, the trial court set forth an extensive recitation of the elements of and defenses to the various charges. N.T., 5/7/10, at 583-98. Specifically, with regard to third-degree murder, the trial court stated the following:

> For murder in the third degree, a killing is [done] with malice if the perpetrator's actions show his or her wanton and willful disregard of an unjustified and extremely high risk that his conduct would result in death or serious bodily injury to another.
>
> In this form of malice, the Commonwealth need not prove that the perpetrator specifically intended to kill another. The Commonwealth must prove, however, that he took action while consciously, and that means knowingly, disregarding the most serious risk he was creating, and that, by his disregard of that risk, he demonstrated his or her extreme indifference to the value of human life.

- 9 -

*Id.* at 584-85; *see also id.* at 587 (noting that to find Johns "guilty of third-degree murder, [the jury] must find the following three elements have been proven beyond a reasonable doubt:  First, that [Victim] is dead.  Second, that [Johns] killed him; and third, that [Johns] did so with malice.").

Further, the trial court stated that "a killing is without malice if the perpetrator acts with a lawful justification or excuse or under circumstances that would reduce the killing to voluntary manslaughter."  *Id.* at 587-88; *see also id.* at 585, 593.  The trial court additionally instructed the jury as follows:

> When these circumstances are present, a killing may be voluntary manslaughter, but never murder.  This is true when a defendant kills in the heat of passion following serious provocation or kills under an unreasonable mistaken belief in justifying circumstances.  Accordingly, you can find malice and murder only if you are satisfied beyond a reasonable doubt that [Johns] was not acting under a sudden and intense passion resulting from serious provocation by [Victim] or under an unreasonable belief that the circumstances were such that, if they existed, would have justified the killing.
>
> A defendant acts under an intense passion if he or she acts under any emotion such as anger, rage, sudden resentment, or terror that is so strong that it renders him incapable of full reflection.  A defendant acts under a sudden passion if the time between provocation and the killing is not long enough for the passion of a reasonable person to cool.
>
> ***
>
> The law recognizes that the cumulative impact of a series of related events can lead to sudden passion and amount to serious provocation.  The test is whether a reasonable person, confronted with the same series of events[,] would become so impassioned that he would be incapable of cool reflection.

- 10 -

*** 

Another circumstance that can reduce murder to voluntary manslaughter is when a defendant is acting under [an] unreasonable belief that the circumstances of the killing were justified. This is known as imperfect self-defense. A self-defense claim under this theory is imperfect only in one respect, an unreasonable rather than reasonable belief that deadly force was required to save the actor's life.

*** 

Imperfect self-defense applies where the defendant actually believed he was in immediate danger of death or serious bodily injury from the victim at the time he used deadly force, but his belief was unreasonable in light of the facts as they appeared to him at that time, the defendant did not violate his duty to retreat.

*Id.* at 593-96.

During deliberations, the jury asked two questions regarding the definition of malice as to each of the various charges and whether imperfect self-defense must be proven to enter a voluntary manslaughter verdict. *Id.* at 605. In response, the trial court re-read its prior instruction with regard to the murder and voluntary manslaughter charges. *Id.* at 605-20. After the jury continued its deliberations, it asked the trial court whether "malice and fear exist in the same circumstance or are they mutually exclusive of each other?" *Id.* at 621. The trial court answered the question as follows:

I heard the question to be, are the concepts of malice and fear mutually exclusive?

Simply stated, the answer to that is no, they are not mutually exclusive if you are satisfied to the beyond the reasonable doubt standard that there is evidence that proves all the elements that

are necessary for a finding of malice or any other element or principle that you are dealing with here.

*Id.* at 626-27.

Here, viewing the jury charge as a whole, we conclude that the trial court accurately stated the elements of voluntary manslaughter and third-degree murder two separate times to the jury. ***See, e.g., Fisher, supra***; ***Commonwealth v. Yale***, 150 A.3d 979, 986 (Pa. Super. 2016) (noting that a "person who kills an individual without lawful justification commits voluntary manslaughter if[,] at the time of the killing[,] he is acting under a sudden and intense passion resulting from serious provocation by … the individual killed.") (citation omitted); ***see also Commonwealth v. Sepulveda***, 55 A.3d 1108, 1142 (Pa. 2012) (stating that trial court accurately conveyed the law with regard to the voluntary manslaughter charge when instructing the jury on two separate occasions); ***Baker***, 963 A.2d at 507 (stating that in reviewing a jury charge, it must be viewed as a whole). The trial court set forth an extensive recitation of the interplay between malice and the elements of voluntary manslaughter, *i.e.*, a reasonable belief that the actor was in immediate danger of serious bodily injury or death. In point of fact, the trial court clearly stated that the jury could not find malice if the elements of voluntary manslaughter were present. ***See*** N.T., 5/7/10, at 594, 616; ***see also id.*** at 627 (instructing, in its supplemental instruction, that the jury must find all of the elements of malice beyond a reasonable doubt). While Johns argues that the trial court

should have instructed the jury that the mere existence of fear was enough to overcome a finding of malice, such a statement would not have been a proper statement of the law. *See Commonwealth v. Grove*, 526 A.2d 369, 373 (Pa. Super. 1987) (noting that while a history of abuse "is certainly a factor to be considered in determining whether an accused's alleged fear of imminent death or serious bodily injury is genuine and reasonable, it does not alter the requirement that the threat of death or serious bodily injury be imminent on the present occasion."). Thus, the trial court properly instructed the jury, and Johns has not established that trial counsel was obliged to object to the instruction, or that this failure caused the third-degree murder verdict.

Based upon the foregoing, the trial court properly denied Johns's PCRA Petition.

Order affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/2017